**Scott M. ROSS, M.D., Appellant,**

**v.**

**BRIGGS AND MORGAN, Respondent,**

**and**

**Briggs and Morgan, Third–Party Plaintiff, Respondent;**

**v.**

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Third–Party Defendant, Respondent.**

**No. C7–93–2568.**

Court of Appeals of Minnesota.

Aug. 9, 1994.

Review Granted Oct. 27, 1994.

Jerome S. Rice, Stephen B. Young, Mahoney, Hagberg & Rice, Ltd., Minneapolis, for Scott M. Ross, M.D.

Michael R. Cunningham, Jonathan M. Redgrave, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for Briggs and Morgan.

Jeffrey J. Bouslog, David M. Wilk, Oppenheimer Wolff & Donnelly, St. Paul, for St. Paul Fire and Marine Ins. Co.

Considered and decided by PARKER, P.J., and SCHUMACHER and HOLTAN,* JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Scott M. Ross, M.D. argues that the district court erred in granting respondent Briggs and Morgan's motion for summary judgment because material issues of fact existed regarding whether the law firm was negligent in not advising that he tender defense of a lawsuit to his insurer, respondent St. Paul Fire and Marine Insurance Company (St. Paul Fire). We reverse and remand.

## FACTS

Ross was a dermatologist for Skin Diseases P.A., a business owned by Dr. Manuel Jaffe. Jaffe also advertised his practice as the "Institute of Cosmetic Surgery and Hair Transplants." When Ross voluntarily terminated his employment with Skin Diseases in April 1987, he took Jaffe's 8,000 name client list with him without Jaffe's permission. Ross incorporated his own practice as "Skin Physicians, P.A." on May 12, 1987 and obtained a commercial general liability insurance policy from St. Paul Fire. Skin Physicians was the named insured and the policy was effective on April 15, 1987.

The policy covered advertising injury, which was defined as

injury caused by any of the following offenses that result from the advertising of your products or work:

—libel or slander;

—written or spoken material made public which belittles the products or work of others;

—written or spoken material made public which violates an individual's right of privacy;

—unauthorized taking of advertising ideas or style of doing business;

—infringement of copyright, title or slogan.

The policy covered the corporation's executive officers, directors, and employees for acts performed within the scope of those roles. It excluded coverage for: (1) injuries resulting from written material made public before the policy went into effect or from written material that the insured knew to be false; (2) injuries resulting from breach of contract; and (3) liability assumed under any contract unless the insured would have been liable for the injury in the absence of the contract.

On April 30, 1987, Ross sent a letter to all 8,000 patients on the client list on letterhead using the name "Skin Physicians, P.A." The letter stated that "we" were pleased to announce the opening of "our" new office at a new address. The letter implied that the move was necessary to accommodate the growth of the practice and stated that "we" would be able to continue to provide quality medical care. Ross also prepared advertisements that looked like Jaffe's advertisements and that used the name "Institute of Cosmetic and Laser Surgery."

Jaffe sued Ross for breach of contract, tortious interference with business relations, misappropriation of trade secrets, deceptive trade practices, unfair competition, and conversion. After Ross, who was represented by Briggs and Morgan, settled with Jaffe, he learned that Jaffe's claims might have been covered by his insurance policy with St. Paul Fire, prompting him to sue Briggs & Morgan for legal malpractice, breach of contract, and negligent misrepresentation. The district court granted Briggs & Morgan's motion for summary judgment and thus did not address St. Paul Fire's summary judgment motion.

## ISSUES

1. Did the district court err in finding that, as a matter of law, Briggs & Morgan's failure to advise Ross to tender defense of the Jaffe action to St. Paul Fire did not damage Ross because the insurance policy did not cover any of Jaffe's claims?

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

2. Is St. Paul Fire entitled to summary judgment?

## ANALYSIS

■ On appeal from a summary judgment, we must view the evidence in the light most favorable to the nonmoving party and determine whether any genuine issues of material fact exist and whether the trial court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Interpretation of an insurance policy is a question of law subject to de novo review. *St. Paul Fire & Marine Ins. Co. v. National Computer Sys., Inc.,* 490 N.W.2d 626, 630 (Minn.App.1992), *pet. for rev. denied* (Minn. Nov. 17, 1992).

■ 1. To establish a legal malpractice claim, a plaintiff must show (1) the existence of an attorney/client relationship; (2) negligence or breach of contract by the attorney; (3) the attorney's acts proximately caused the client's damages; and (4) the client would not have been damaged but for the attorney's conduct. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). Briggs and Morgan argues that, as a matter of law, Ross was not damaged by its actions because none of Jaffe's claims were covered by the policy. We disagree.

■ The duty to defend is broader than the duty to indemnify. *Lanoue v. Fireman's Fund Am. Ins. Cos.,* 278 N.W.2d 49, 53 n. 1 (Minn.1979). Because we conclude that the activities for which Jaffe sued Ross arguably caused advertising injury as defined by St. Paul Fire's policy, summary judgment should not have been granted.

■ First, Ross' activities were clearly "advertising." St. Paul's policy does not define "advertising," so the term must be given its plain and ordinary meaning. *National Computer,* 490 N.W.2d at 631. *Black's Law Dictionary* 50 (5th ed.1979) defines "advertise" as:

Any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business and includes * * * statements and representations made in a newspaper or other publication or on radio or television or contained in any notice, handbill, sign, catalog, or letter.

Here, Ross sent the April 30, 1987 letter to solicit business for his new practice. Furthermore, although the letter was not published in a newspaper or broadcast on television, it was widely distributed. *Cf. Fox Chem. Co. v. Great Am. Ins. Co.,* 264 N.W.2d 385, 386 (Minn.1978) (under certain conditions, "advertising" means widespread distribution of material); *John Deere Ins. Co. v. Shamrock Indus., Inc.,* 696 F.Supp. 434, 439–40 (D.Minn.1988) (three letters sent to one customer were sufficient to constitute advertising), *aff'd* 929 F.2d 413 (8th Cir.1991). Finally, the letter's distribution was sufficiently broad to constitute advertising under the policy. *See New Hampshire Ins. Co. v. Foxfire, Inc.,* 820 F.Supp. 489, 494 (N.D.Cal. 1993) (letter constituted advertising where its audience was small but consisted of nearly all of small business' client base).

Second, Jaffe's claims alleged injuries that arguably were covered by the policy. The policy does not define the offenses that constitute advertising injury. Therefore, we must again give these terms their plain and ordinary meaning. *National Computer,* 490 N.W.2d at 631.

Jaffe's deceptive trade practices and unfair competition claims were based in part on allegations that (1) Ross was a competitor; (2) Ross used advertising to pass himself off as Jaffe or as Jaffe's associate; and (3) Ross' actions actually confused patients about his affiliation with Jaffe. St. Paul Fire's duty to defend is not necessarily limited by a literal reading of Jaffe's complaint. *Brown v. State Auto. & Cas. Underwriters,* 293 N.W.2d 822, 825–26 (Minn.1980) (when allegations in complaint were broad enough to include claim arguably within terms of policy coverage, insurer had duty to defend). Because the "passing off" portions of Jaffe's deceptive trade practices and unfair competition claims suggest that Ross took and used his advertising ideas and possibly even his entire style of doing business, they arguably were covered by the "unauthorized taking of advertising ideas or style of doing business" clause in the policy. *See J.A. Brundage Plumbing &*

*Roto–Rooter, Inc. v. Massachusetts Bay Ins. Co.,* 818 F.Supp. 553, 557 (W.D.N.Y.1993) ("misappropriation of advertising ideas" means wrongful taking of another's manner of advertising), *vacated on other grounds,* 153 F.R.D. 36 (W.D.N.Y.1994); *see also Merchants Co. v. American Motorists Ins. Co.,* 794 F.Supp. 611, 619 (S.D.Miss.1992) (when competitor sends direct mail solicitations to everyone on improperly acquired client list, "there is coverage under the 'misappropriation of advertising ideas' language of the [insurance] policies").

In addition, Ross' use of the names "Skin Physicians, P.A." and "Institute of Cosmetic and Laser Surgery" arguably was covered by the "infringement of copyright, title or slogan" clause. A "title" is a "'mark, style, or designation; a distinctive appellation; the name by which anything is known.'" *Brundage,* 818 F.Supp. at 559 (quoting *Black's Law Dictionary* 1485 (6th ed.1990)). It may also be a trademark or tradename. *Id.* A "slogan" is a combination of words that identifies and distinguishes the sellers's goods. *Id.* The similarity of Ross' "Skin Physicians P.A." and "Institute of Cosmetic and Laser Surgery" to Jaffe's "Skin Diseases P.A." and "Institute of Cosmetic Surgery and Hair Transplants" arguably constituted an infringement of Jaffe's titles or slogans that was covered by the insurance policy.

Briggs & Morgan claims that coverage did not exist because Jaffe's injuries did not result from Ross' advertising. Jaffe claimed, however, that Ross' advertising confused Jaffe's patients about Ross' affiliation with him. Thus, the damages Jaffe sought to recover for his "passing off" claim resulted directly from Ross' advertising. Moreover, as the injury caused by Ross' misappropriation of the client list primarily occurred when Ross sent the April 30, 1987 letter to everyone on that list, a large part of the damages Jaffe sought for the misappropriation of trade secrets claim resulted directly from Ross' advertising.[1]

Briggs & Morgan further contends that several of the policy's exclusions applied. We disagree.

■ The exclusion for false statements did not apply. While Jaffe may have alleged that the advertisements were false, there is no evidence that the insured, Ross, ever believed that the statements in the advertisements were false.

■ The policy does exclude coverage for liability assumed under a contract, but this exclusion does not apply to liability for damages that would have attached in the absence of the contract. Jaffe could have brought all his claims other than breach of contract in the absence of his employment contract with Ross. Thus, coverage is not excluded under the assumed liability clause.

Nor is coverage excluded because the injury arose out of a breach of a noncompete agreement Ross had with Jaffe. Given the manner in which Ross wrote the letter and the advertisements, Jaffe could have sued Ross for the business torts even if no employment agreement had existed. As Ross' liability did not depend upon a contractual duty, Jaffe's claims were not limited to breach of the contract. *Cf. Home Indem. Co. v. Avol,* 706 F.Supp. 728, 731 (C.D.Cal.1989) (injuries sounded in contract since contract created basis for action), *aff'd* 912 F.2d 469 (9th Cir.1990).

Nor was the fact that the policy's named insured was Skin Physicians necessarily fatal to coverage by St. Paul. First, Ross arguably was protected by the policy as an officer, director, and employee of the corporation. Second, the advertisements were published in the newspaper and the magazine after Skin Physicians was incorporated. Third, Ross may have been covered for sending the April 30, 1987 letter if Skin Physicians was a de facto corporation on that date. A de facto corporation may have existed when Ross wrote the letter because he was in the process of creating the corporation under the applicable laws and he was exercis-

---

1. Ross also argued that St. Paul Fire & Marine had a duty to defend under the libel or belittlement clauses of the policy. Although Jaffe's complaint alleged that Ross disparaged his services, neither the letter nor the advertisements disparaged or even mentioned Jaffe or his practice. Therefore, the disparagement claim did not arise out of Ross' advertising and was not covered by the policy.

ing rights that he would have had under the law if the corporation had been formed. *See Almac, Inc. v. JRH Dev., Inc.,* 391 N.W.2d 919, 924 (Minn.App.1986) (defining de facto corporation), *pet. for rev. denied* (Minn. Oct. 17, 1986). Since the policy's effective date was April 15, 1987 and Ross was acting on behalf of Skin Physicians when he sent the April 30, 1987 letter, he arguably was covered by Skin Physicians' policy even though the corporation had not yet been formally incorporated.

Finally, Briggs & Morgan argues that its failure to tender the lawsuit to St. Paul Fire was not the proximate cause of Ross' injuries because St. Paul Fire has said that it would have refused coverage. Ross, however, could have sued to recover the cost of his defense from St. Paul Fire if it had refused to fulfill its duty to defend.

In short, given the existence of a duty to defend, it cannot be said as a matter of law that Briggs & Morgan's failure to advise Ross to tender defense of the Jaffe lawsuit to St. Paul Fire did not damage him. We reverse and remand because the other elements of Ross' claim such as whether Briggs & Morgan was negligent in not advising Ross to tender defense of the suit to St. Paul Fire or whether Ross was contributorily negligent are in dispute.

2. St. Paul Fire asks this court to grant its motion for summary judgment. The district court never ruled on St. Paul Fire's motion. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (appellate court will review only those matters raised before and decided by district court). Furthermore, St. Paul Fire has not filed a notice of review of the district court's decision. *See* Minn. R.Civ.App.P. 106 (to obtain review of adverse order, respondent must file notice of review). Thus, we decline to decide St. Paul Fire's summary judgment motion and remand the case to the district court for a determination on this matter.

## DECISION

Jaffe's lawsuit raised claims that constituted advertising injuries arguably covered by Ross' insurance policy. Therefore, the dis-

trict court erred in finding, as a matter of law, that Ross was not damaged by Briggs & Morgan's failure to advise him to tender defense of the lawsuit to St. Paul Fire. St. Paul Fire's request for summary judgment is remanded.

**Reversed and remanded.**