**AMERICAN ECONOMY INSURANCE COMPANY, Plaintiff,**

v.

**REBOANS, INC., a California corporation dba Nikaido dba Heiseido dba America–Ya, et al., Defendants.**

No. C–92–4341–DLJ.

United States District Court,
N.D. California.

Dec. 27, 1994.

Order Denying Reconsideration
June 22, 1995.

Kathleen E. Hegen, Jacqueline M. Jordan, Boornazian Jensen & Garthe, Oakland, CA, for American Economy Ins. Co.

Jacqueline Jordan Leung, Boornazian Jensen & Garthe, Oakland, CA, for American States Ins. Co.

Jack R. Nelson, Crosby Heafey Roach & May, Oakland, CA, for Reboans, Inc., Heiseido Inc, Charles W. Bogar, Jo Ann Bogar.

Katherine M. Basile, Heller Ehrman White & McAuliffe, Palo Alto, CA, for Hunting World Inc.

## ORDER

JENSEN, District Judge.

A hearing was held on November 30, 1994 on defendant and cross-complainant's motion for reconsideration and partial summary judgment. Kathleen E. Hegen appeared for plaintiff and cross-defendant American Economy Insurance Company ("American States") and Kenneth M. Seeger appeared for defendant and cross-complainant Reboans, Inc. ("Reboans"). For the reasons stated below, defendant Reboans' motions for reconsideration and partial summary judgment are GRANTED.

## I. BACKGROUND

Reboans is a California corporation that formerly owned and operated three gift shops, Nikaido, Heiseido and America–Ya, all of which are located in the Union Square area of downtown San Francisco. Charles Bogar is the sole shareholder and officer of Reboans. Jo Ann Bogar is a former shareholder and officer.

Reboans specializes in the import, export and retail sale of famous brand-name merchandise, including leather goods, apparel, jewelry, handbags, accessories, luggage and other merchandise. Reboans' retail activities in San Francisco have focused primarily on tourists, especially Japanese tourists. To that end, Reboans advertises in tour books distributed for use by Japanese tourists visiting the United States, and solicits San Francisco Hotels and tour guides to direct tourists to Reboans' stores by distributing handbills. These advertisements display the names of many of the product lines carried by the gift shops, including (until recently) the "Dunhill" name. In addition, until recently Reboans prominently displayed the "Dunhill" name on posters and placards in its store windows and on point-of-purchase displays in its retail stores.

Dunhill manufactures and markets pipes, pens, leather goods, jewelry and accessories under its trademarked name "DUNHILL" and its trademark stylized "D" design.

On February 10, 1993, Dunhill filed a complaint against Reboans and Charles Bogar, as Reboans' sole shareholder, seeking to recover damages for trademark infringement, false designation of origin, trademark counterfeiting, racketeering, unfair competition and injury to business reputation.

In its complaint, Dunhill alleged that Reboans is not an "authorized" retailer, that it is not authorized to use Dunhill's trademarks in its advertisements or to sell Dunhill products, that Reboans wrongly displays Dunhill's trademarks "DUNHILL" and the stylized "D" logo in its advertisements and wrongly sells copies of Dunhill's products and that Dunhill is sustaining actual resulting injury.

Dunhill's first claim for relief, which is for "trademark counterfeiting," alleges that

The counterfeiting, imitating or copying of Alfred Dunhill's registered trademarks, and the sale and offering for sale of such goods bearing counterfeits of Alfred Dunhill's registered DUNHILL work marks and stylized "D" logos, have confused, and are likely to continue to confuse or deceive the public into believing defendant' products originate from or are associated with plaintiff.

Dunhill's second claim, for "trademark infringement," alleges that:

This counterfeiting, imitating, copying and unauthorized use of Alfred Dunhill's registered DUNHILL work marks and stylized "D" logos constitutes trademark infringement and trademark counterfeiting and is likely to cause confusion, deception and mistake among the consuming public and those who view defendants' goods bearing Alfred Dunhill's trademarks as indicating an association between defendants' counterfeit goods and plaintiff's trademarks.

Dunhill's third claim, for false designation of origin and false representations, alleges that

Defendants' willful counterfeiting, imitating or copying of Alfred Dunhill's registered DUNHILL word marks or stylized "D" logos, the unauthorized sale, purchase, distribution, and offering for sale of Dunhill branded goods, the false statements by defendants, and the use of the trade dress of plaintiff's products, constitutes a false designation of origin or a false description or representation that wrongly and falsely designates that such merchandise distributed and sold now or in the future by defendants, as originating from, and connected with, authorized by, or otherwise associated with Alfred Dunhill, and constitutes utilizing false descriptions or representations in interstate commerce.

Dunhill's eighth claim, for common law palming off, alleges that

Defendants' counterfeiting, imitating or copying of Alfred Dunhill's registered DUNHILL word marks or stylized "D" logos falsely designates from, or is otherwise associated with, Alfred Dunhill.

Defendant's acts have confused, and are likely to continue to confuse, mislead and deceive the public as to the source of sponsorship of defendants' goods, permitting defendants to palm off defendants' goods as those of Alfred Dunhill, all to the detriment of plaintiff and the unjust enrichment of defendants.

Dunhill's prayer for relief includes, *inter alia*, a request that the Court enjoin Reboans from

using any simulation, reproduction, counterfeit, copy or colorable imitation of Alfred Dunhill's registered DUNHILL word marks or stylized "D" logos, or any of Alfred Dunhill's registered or licensed trademarks or trade dress in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, printing, importation, production, circulation or distribution of any product, in such fashion as to relate or connect such product in any way to Alfred Dunhill, or to any goods sold, manufactured, sponsored or approved by, or connected with Dunhill.

In addition, Dunhill prays for an order "directing that [Reboans] deliver for destruction all products, labels, signs, prints, packages ... and advertisements in their possession, or under their control, bearing work marks or stylized "D" logos, or any of Alfred Dunhill's trademarks...."

Finally, Dunhill prays for actual damages it claims to have suffered because of Reboans' alleged "trademark infringement, counterfeiting, false designation or origin and unfair competition."

In January 1989, Reboans purchased a Commercial General Liability ("CGL") insurance policy from plaintiffs and counterdefendants American States. The policy has been renewed and it was in effect during the time period in which the activities of which Dunhill complains took place.

Pursuant to the terms of the policy, American States agreed to pay the full costs and expenses of defending all lawsuits against Reboans (and/or Mr. Bogar, as it sole shareholder) for claims potentially covered under the policy.

The American States policy is divided into two separate coverage parts. Coverage Part A provides insurance for "bodily injury and property damage," while Coverage Part B separately provides insurance for "personal and advertising injury liability."

The "Advertising Injury" part of the American States policy provides coverage as follows: "This insurance applies to 'advertising injury' only if caused by an offense committed: ... (2) In the course of advertising your goods, products or services."

"Advertising injury" is defined in the American States policy, in part, as: "Misappropriation of advertising ideas or style of doing business" and as "Infringement of copyright, title or slogan."

The American States policy does not define the terms "advertising," "your goods, products or services," "misappropriation," "advertising ideas," "style of doing business," "infringement," "copyright," "title," or "slogan."

At the time the Dunhill Complaint was filed, American States had already refused to defend Reboans against similar claims brought against Reboans by Hunting World (the *"Hunting World* action"). In fact, American States had already filed the present action against Reboans for declaratory relief arising out of American States' refusal to defend the Hunting World action and the parties had already briefed cross-motions for summary judgment. Nevertheless, Reboans and Bogar tendered the defense in the Dunhill lawsuit to American States, by letter dated February 16, 1993. Reboans included a copy of the Dunhill Complaint with the letter tendering coverage. Subsequently, Reboans provided American States with examples of Reboans' advertising materials displaying Dunhill's trademarked name (in both English and Japanese) and stylized "D" logo.

While the cross-motions for summary judgment were still pending, American States denied its obligation to defend Reboans and Bogar. By letter dated March 5, 1993, American States stated that it would amend its complaint in the present coverage dispute in order to add its refusal to defend Reboans in the *Dunhill* action to its refusal

to defend Reboans in the *Hunting World* action.

The cross motions 'for summary judgment and partial summary judgment were heard by the Honorable Barbara Caulfield on May 2, 1994. Judge Caulfield filed an order (the "May 2nd Order") granting summary judgment to American States on its claim that it owed Reboans no duty to defend Reboans in the *Hunting World* action.

After Reboans filed a notice of appeal from the May 2nd Order, but before the district court entered judgment on it, American States filed the amended complaint claiming that it owed Reboans no duty to defend the *Dunhill* action. American States' amended complaint arguably deprived the Court of Appeals of jurisdiction over the appeal from the judgment later entered on the unamended complaint, on the ground that that judgment was not a "final decision" within the meaning of 28 U.S.C. § 1291.[1] As a result, Reboans filed a motion in the district court to strike the amended complaint or to enter a Rule 54(b) partial final judgment on the *Hunting World* portion of the amended complaint so that this appeal could proceed. That motion was calendared for hearing on September 23, 1994 before Judge Caulfield.

American States' response to Reboans' motion in the district court was due on September 1, 1994, but it filed no response. Subsequently, Reboans discovered that on August 30, 1994, the California Court of Appeal filed an opinion in *Clary Corp. v. Union Standard Ins. Co.,* 33 Cal.Rptr.2d 486 (1994). Defendants believe that this case casts substantial doubt on the validity of the district court's May 2nd Order granting American States's summary judgement on the duty to defend the *Hunting World* action. Because the duty to defend the *Dunhill* action turns on the same construction of the same insurance policy involved in the *Hunting World* action, defendants believe that *Clary* bears favorably on Reboans' claim that American States owed a duty to defend that action as well.

Because of *Clary,* and because the district court has not entered an appealable final judgment with a Rule 54(b) certification, Re-

boans decided not to proceed with the motion in the district court to strike the amended complaint or to enter a Rule 54(b) partial final judgment. Instead, Reboans decided to seek reconsideration of the district court's order granting summary judgement in the *Hunting World* matter and file a motion for summary judgment in the *Dunhill* matter. Accordingly, Reboans withdrew the September 23 motion and prepared the present motion for reconsideration of the May 2nd Order and the accompanying motion for partial summary judgment on the duty to defend the *Dunhill* action.

As a result of these developments, Reboans will not be filing an opening brief in the earlier appeal of the May 2nd Order and will instead await the outcome of the present motions in this court.

## II. LEGAL STANDARDS

### A. Motion for Reconsideration

■ Federal Rule of Civil Procedure 60(b) governs the reconsideration of final orders. Motions to reconsider are committed to the discretion of the trial court. *Pacific Group v. First State Ins. Co.,* 841 F.Supp. 922, 932 (N.D.Cal.1993); *Combs v. Nick Garin Trucking,* 825 F.2d 437, 441 (D.C.Cir. 1987). To succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision. *See, e.g., Kern–Tulare Water Dist. v. City of Bakersfield,* 634 F.Supp. 656, 665 (E.D.Cal.1986), *aff'd in part and rev'd in part on other grounds,* 828 F.2d 514 (9th Cir.1987), *cert. denied,* 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988).

■ A motion for reconsideration is appropriate where there has been an intervening change in the controlling law. *School Dist. No. 1J Multnomah County v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993); *Painting Ind. of Hawaii v. U.S. Dept. of Air Force,* 756 F.Supp. 452, 453 (D.Hawaii 1990) A motion for reconsideration is appropriate under Rule 60(b)(6) based on "any reasons

---

**1.** Nor could jurisdiction be predicated on Rule 54(b), because the district court had not entered

partial final judgment and had not made the certification required by that Rule.

justifying relief from the operation of the judgment," including a change in the controlling law. *Painting Ind. of Hawaii, supra,* 756 F.Supp. at 453. However, relief under Rule 60(b)(6) requires a finding of "extraordinary circumstances." *Backlund v. Barnhart,* 778 F.2d 1386, 1388 (9th Cir.1985).

### B. *Motion for Partial Summary Judgment*

Federal Rules of Civil Procedure 56 states that summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In a motion for summary judgment, "[i]f the party moving for summary judgment meets it initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *'specific facts* showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

Rule 56(c) requires this Court to enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: "[T]here must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). This Court thus applies to a motion for summary

judgment the same standard as for a motion for directed verdict. "[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

## III. DISCUSSION

### A. *Motion for Reconsideration*

■ Reboans and American States filed cross motions for summary judgment and partial summary judgment which were decided on May 2, 1994, when Judge Caulfield filed an order granting summary judgment to American States. Nearly four months after Judge Caulfield's May 2 Order, the California Court of Appeal, Fourth Appellate District, Division Three, filed its opinion in *Clary Corp. v. Union Standard Ins. Co.,* 33 Cal.Rptr.2d 486 (1994). In *Clary,* a California appellate court spoke for the first time on an issue on which Judge Caulfield expressly offered "no opinion"—the meaning of the coverage provision "infringement of title." As the first decision on this issue, *Clary* represents a change in the controlling law, which requires this Court to reconsider the May 2 Order.

In *Clary,* an insured was sued for patent infringement and sought coverage under its commercial general liability policy for advertising injury arising out of infringement of title. The insured argued that "title" in the phrase "infringement of title" meant "title to a piece of property," such as a patent. *Id.* 33 Cal.Rptr.2d at 492. The *Clary* court surveyed the existing law, including the New York district court's vacated opinion in *Brundage* and an August 9, 1994 opinion out of Minnesota, *Ross v. Briggs and Morgan,* 520 N.W.2d 432 (Minn.1994). It also analyzed the phrase in the context of the entire policy. The *Clary* court concluded that

infringement of title refers to claims based on the *confusion of names or designations.* The word 'title' denotes a 'descriptive or general heading' or 'distinguishing name,' such as "Roto–Rooter" in *Brundage,* or "Skin Disease" in *Ross.* Coverage for infringing on someone else's "title" (that is, name) makes perfect sense in the context

of advertising injury protection for infringement of copyright or slogan: advertisements *themselves* are likely to be the source of any claim based on one business masquerading as another. *Id.* at 492 (emphasis in original.)

We agree with defendant Reboans that the decision in *Clary* is a compelling basis for reconsidering and reversing the May 2 Order. The policy that American States sold to Reboans used the same policy form analyzed by the Court of Appeal in *Clary*. The American States policy provides coverage to Reboans for "advertising injury" caused by an offense committed "in the course of advertising [Reboans'] goods, products or services." American States Policy, p. 3, ¶ 1.d. "Advertising injury" is defined to include "injury arising out of . . . infringement of copyright, title or slogan." American States policy, p. 7, Section V, ¶ 1.c. *Clary* defines "infringement of title" to mean claims based on the confusion of names or designations. Thus, in the context of the *Hunting World* case, the American States policy covers: (1) injuries suffered by Hunting World; (2) arising out of Reboans' infringement of a name or designation; (3) if the infringement was committed in the course of advertising by Reboans of goods it was offering for sale.

American States did not define "infringement of title or slogan" in its policy. Accordingly, these terms must be construed in accordance with Reboans' objectively reasonable expectations, taken in the context of the policy as a whole, and in the "ordinary and popular sense" of the words used in each term. *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990). Under this framework, it is "objectively reasonable" for Reboans to expect that the meaning of "infringement of title" would encompass, as the Court of Appeal determined, use of another's name or designation in an advertisement, whether or not the name or designation was a "trademark."

Accordingly, the Court chooses to apply the reasoning of *Clary* to the facts of the present case and REVERSES the May 2 Order. American States is ordered to assume its duty to defend Reboans in the *Hunting World* matter.

## B. *Motion for Partial Summary Judgment*

■ Both parties essentially agree that the issue of duty to defend in the *Dunhill* case should be decided by summary judgment. The *Hunting World* and the *Dunhill* actions are virtually identical, having even been brought by the same law firm. The two cases are so similar that the parties to this litigation considered stipulating to be bound in the *Dunhill* coverage action by the outcome of the *Hunting World* appeal. Decl. of Leung. In any event this Court finds that the reasoning of the court in the *Hunting World* action applies equally to *Dunhill* and requires this Court to find that American States also has a duty to defend or indemnify Reboans for the *Dunhill* action. For over twenty-five years, California courts have acknowledged the broad scope of the duty of an insurer to defend its insured; the duty is triggered by any claim that creates even a possibility of ultimate coverage. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275–277, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) ("the carrier must defend a suit which *potentially* seeks damages within the coverage" must be made by the insurer from the allegations of the complaint and any other sources available to it at the time of the tender of defense.) *Gray v. Zurich*, 65 Cal.2d at 276–277, 54 Cal.Rptr. 104, 419 P.2d 168. Thus the duty to defend exists whenever coverage is in doubt at the outset of a claim even if coverage never develops. *Saylin v. California Ins. Guarantee Ass'n*, 179 Cal.App.3d 256, 263, 224 Cal.Rptr. 493 (1986).

■ Coverage clauses are to be interpreted broadly in favor of the insured so as to afford the greatest protection to the insured. *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal.3d 94, 101–102, 109 Cal.Rptr. 811, 514 P.2d 123 (1973); *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 808, 180 Cal.Rptr. 628, 640 P.2d 764 (1982). This is because the ordinary expectation of one who purchases liability insurance is that he will be covered for any liabilities incurred as a result of any activities to which the policy relates. *Id.* at 810, 180 Cal.Rptr. 628, 640 P.2d 764.

The corollary to this is that exclusionary clauses are to be interpreted narrowly against the insurer. *State Farm Mut. Auto. Ins. Co. v. Partridge,* 10 Cal.3d at 101–102, 109 Cal.Rptr. 811, 514 P.2d 123. Once an insured establishes that coverage applies under the broad insuring agreements in the policy, the burden of proof shifts to the insurer to provide that a covered claim falls within an exclusion. *Royal Globe Ins. Co. v. Whitaker,* 181 Cal.App.3d 532, 537, 226 Cal.Rptr. 435 (1986).

A court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must interpret the language in context with regard to its intended function in the policy. *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). If this rule does not resolve the ambiguity, that uncertainty *must* be resolved against the insurer—if semantically permissible, the contract will be given such construction as will likely achieve its object of providing coverage for the loss to which the insurance relates. *Harris v. Glens Falls Ins. Co.,* 6 Cal.3d 699, 701, 100 Cal.Rptr. 133, 493 P.2d 861 (1972). The purpose of this canon of construction is to protect the insured's reasonable expectation of coverage in a situation in which the insurer controls the language of the policy. *Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d at 809, 180 Cal.Rptr. 628, 640 P.2d 764.

## A. Infringement of Title

The American States' policy provides coverage to Reboans for "advertising injury" caused by a offense committed "in the course of advertising [Reboans'] goods, products or services." American States Policy, p. 3, ¶ 1.c. "Advertising injury" is defined to include "injury arising out of ... infringement of copyright, title or slogan." American States policy, p. 7, Section V, ¶ 1.d.

The meaning of "infringement of title" in an insurance policy identical to American States' policy was at the heart of the California Court of Appeal's recent decision in *Clary.* The *Clary* decision is consistent with the decisions of numerous courts around the nation that have examined this same coverage provision. *See e.g., Atlantic Mutual Ins. Co. v. Brotech Corp.,* 857 F.Supp. 423 (E.D.Pa.1994) (infringement of title refers to a distinctive name or designation); *P.J. Noyes Co. v. American Motorists Ins. Co.,* 855 F.Supp. 492 (D.N.H.1994) ("the allegation that Noyes used the name "Dustfree Precision Pellets" in their advertising, literature and packaging, arguably falls within the ambit of misappropriation of advertising ideas or style of doing business or infringement of a title or slogan"); *J.A. Brundage Plumbing & Roto–Rooter, Inc. v. Massachusetts Bay Ins. Co.,* 818 F.Supp. 553, 558–559 (W.D.N.Y.1993), vacated by reason of settlement, 153 F.R.D. 36, 38 (W.D.N.Y.1994) ("Clearly, then, infringement of 'title' can include trademark or tradename infringement."); *Ross v. Briggs & Morgan,* 520 N.W.2d 432, 436 (Minn.App.1994) ("The similarity of Ross' "Skin Physicians P.A." ... to Jaffe's "skin Diseases P.A." ... arguably constituted an infringement of Jaffe's titles or slogans that was covered by the insurance policy.").

Thus, in the context of the *Dunhill* case, the American States policy covers: (1) injuries suffered by Dunhill, (2) arising out of Reboans' infringement of a name or designation, (3) if the infringement was committed in the course of advertising by Reboans of goods it was offering for sale.

Dunhill alleges that it suffered recoverable "injury" (such as lost profits). *See e.g.* Dunhill Complaint, p. 8 ¶ 23, p. 29 ¶ 4–6. Moreover, the allegations of the Dunhill Complaint and the undisputed facts make it clear that Dunhill's claim is for "infringement of a name or designation" (i.d., the name "DUNHILL" and the designation stylized "D" logo). *See e.g.* Dunhill Complaint ¶¶ 17, 26, 31. Finally, this offense is alleged to have been committed in the course of Reboans' advertising. *See e.g.* Dunhill Complaint ¶ 56 ("Defendants have further palmed off their goods as those of Alfred Dunhill by their false labeling and thereby made misrepresentations to the consuming public, members of which are likely to have believed that defendants' counterfeit

merchandise emanate from, or are associate with, Alfred Dunhill."); ¶ 64 ("Defendants' counterfeiting, imitating or copying of Alfred Dunhill's registered DUNHILL word marks or stylized "D" logos falsely designates that such merchandise distributed and sold by defendants originates from, or is otherwise associated with, Alfred Dunhill."). Therefore, American States owes Reboans a duty to defend Reboans in the *Dunhill* action because the complaint alleges infringement of title.

## B. Distinctive Trade Dress

■ The American States Policy also defines "advertising injury" as "injury arising out of ... misappropriation of ... style of doing business." American States' Policy, p. 7, section V, ¶ 1.c. As noted above, American States did not define "style of doing business" in its policy. Thus, under *AIU Ins. Co. v. Superior Court,* the term must be construed in accordance with Reboans' objectively reasonable expectations, taken in the context of the policy as a whole and in the "ordinary and popular sense" of those words. 51 Cal.3d at 807, 274 Cal.Rptr. 820, 799 P.2d 1253.

Numerous courts that have examined advertising injury coverage for "misappropriation of style of doing business" have concluded that the term refers to trade dress infringement. For example, one district court applying California law held that "The term 'style of doing business,' as it appears in the insurance policy, has been used by the courts to refer to a company's comprehensive manner of doing business. [Footnote omitted.] 'Style of doing business' expresses essentially the same term as the more widely used term: 'trade dress.' " *St. Paul Fire and Marine Ins. Co. v. Advanced Interventional Systems, Inc.,* 824 F.Supp. 583 (E.D.Va.1993) *aff'd* 21 F.3d 424 (4th Cir.1994). *See also, J.A. Brundage Plumbing & Roto–Rooter, Inc. v. Massachusetts Bay Ins. Co.,* 818 F.Supp. 553, 558–559 (W.D.N.Y.1993), *vacated by reason of settlement,* 153 F.R.D. 36 (W.D.N.Y. 1994) ("one's mark and name is an integral part of an entity's 'style of doing business.' Such misappropriation of 'style of doing business' would include trademark, trade name,

or servicemark infringement."); *P.J. Noyes Co. v. American Motorists Ins. Co.,* 855 F.Supp. 492 (D.N.H.1994) ("the allegation that Noyes used the name "Dustfree Precision Pellets" in their advertising, literature and packaging, arguably falls within the ambit of misappropriation of advertising ideas or style of doing business or infringement of a title or slogan"); *Ross v. Briggs & Morgan,* 520 N.W.2d 432, 435–436 (Minn.App.1994) ("Because the 'passing off' portion of Jaffe's deceptive trade practices and unfair competition claims suggest that [insured] took and used his advertising ideas and possibly even his entire style of doing business, they arguably were covered by the 'unauthorized taking of advertising ideas or style of doing business' clause in the policy.")

Thus, as all of the cases cited above demonstrate, it is "objectively reasonable" for Reboans to expect that the meaning of "style of doing business" would encompass the statutory and common law tort of trade dress infringement, which is precisely the claim brought against Reboans in the *Dunhill* action. The Lanham Act claims in the Dunhill complaint are the statutory equivalent of the old common law tort of trade dress infringement. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768–69, 112 S.Ct. 2753, 2763, 120 L.Ed.2d 615, 629–631 (1992) (Stevens, J., concurring) ("The federal courts are in agreement that Section 43(a) creates a federal cause of action for trademark and trade dress infringement claims").

In fact, Dunhill has asserted claims of trade dress infringement against Reboans under both the Lanham Act and under California law. Dunhill's third claim for relief for "False Designation of Origin" under section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) is a statutory claim for trade dress infringement. Specifically, Dunhill alleges that

Defendants' willful counterfeiting, imitating or copying of Alfred Dunhill's registered DUNHILL word marks or stylized "D" logos ... *and the use of the trade dress of plaintiff's products,* constitutes a false designation of origin or a false description or representation.... [Dunhill Complaint ¶ 36.]

Similarly, Dunhill's eighth claim, for common law palming off, includes allegations of trade dress infringement:

> Defendants' counterfeiting, imitating or copying of Alfred Dunhill's registered DUNHILL word marks or stylized "D" logos falsely designates that such merchandise distributed and sold by defendants originated from, or is otherwise associated with, Alfred Dunhill.

> Defendants' acts have confused, and are likely to continue to confuse, mislead and deceive the public as to the source of sponsorship of defendants' goods, permitting defendants to palm off defendants' goods as those of Alfred Dunhill, all to the detriment of plaintiff and the unjust enrichment of defendants. [Dunhill Complaint ¶¶ 64–65.]

Reboans is thus accused specifically of misappropriating Dunhill's trade dress by using the name "DUNHILL" and the stylized "D" logo to "pass off" its products as those of Dunhill through its advertising. California law requires only a "causal connection" between the claims against the insured and "advertising" for there to be injury "in the course of" advertising. *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1265, 1277, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). The allegations of the Dunhill complaint and the facts made available to American States establish that Reboans is potentially liable for trade dress infringement [Section 43(a) of the Lanham Act] and common law "passing off" of its goods as those of Dunhill in its advertising. Therefore, American States owes Reboans a duty to defend Reboans in the *Dunhill* action because the complaint alleges misappropriation of style of doing business.

For the aforementioned reasons, defendant Reboans' motions for reconsideration of the May 2 Order and partial summary judgment on American States' duty to defend are GRANTED.

Accordingly, this Court GRANTS summary judgment to Reboans on its claim that American States owes Reboans a duty to defend in the *Hunting World* action. In addition, this Court GRANTS partial summary judgment to Reboans on its claim that American States owes Reboans a duty to defend in the *Dunhill* action.

IT IS SO ORDERED.

## ORDER ON RECONSIDERATION

On February 1, 1995, at the status conference in the above captioned matter, this Court requested briefing on the effect, if any, of the depublication of the California appellate decision, *Clary Corp. v. Union Standard Inc. Co.*, 33 Cal.Rptr.2d 486 (1994) on this Court's December 27, 1994 Order granting reconsideration and partial summary judgment in favor of Reboans. This Court construes the papers filed by American States as a motion to reconsider this Court's December Order. Having considered the papers submitted, the Court hereby DENIES American States' motion for reconsideration.

### I.  BACKGROUND

This is a suit over plaintiff American States' duty to defend defendant Reboans against claims that it infringed on trademarks when it advertised and sold "Dunhill" and "Hunting World" products. Reboans' insurance policy covers, among other losses, suits based on the following types of "advertising injury":

> c.  Misappropriation of advertising ideas or style of doing business;  or

> d.  Infringement of copyright, title or slogan.

This Court, Judge Caulfield presiding, issued an order in the *Hunting World* case on May 2, 1994. The order held that plaintiff American Economy Insurance had no duty to defend defendant Reboans against trademark infringement claims, because the claims were not based on a "misappropriation."

The subsequent procedural history of the case is as follows: Defendant Reboans filed a notice of appeal on June 1, 1994. On June 23, 1994, Judge Caulfield entered judgment in favor of American Economy. On the same date, plaintiffs filed an amended complaint that added American States as a plaintiff and Dunhill as a defendant. Defendants subsequently filed a motion to dismiss the amended complaint, enter judgment on the counterclaim, and stay the case pending appeal.

The motion was withdrawn in September. On November 10, 1994, the Ninth Circuit dismissed the appeal.

This Court filed an order on December 27, 1994. That order granted reconsideration of the May order, holding that there was a duty to defend the *Hunting World* action. The order also granted partial summary judgment to Reboans on the same issue vis-a-vis the *Dunhill* action. The order relied in part on *Clary Corp. v. Union Standard Ins. Co.*, 33 Cal.Rptr.2d 486 (1994). Just before the order was filed, the California Supreme Court denied review of *Clary* but ordered it not to be published. Both parties sent letters to the Court in late December, apparently mailed just before receiving copies of the order, informing the Court of the depublication of *Clary*. At the status conference on February 1, 1995, this Court requested briefing on the possible effect, if any, of the depublication of *Clary* on this Court's Order.

## II. DISCUSSION

### A. *Legal Standard*

Federal Rule of Civil Procedure 60(b) governs the reconsideration of final orders.

Motions to reconsider are committed to the discretion of the trial court. *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C.Cir. 1987). To succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision. *See, e.g., Kern–Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D.Cal.1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir.1987), *cert. denied*, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988).

A motion for reconsideration is appropriate where there has been an intervening change in the controlling law. *School Dist. No. 1J Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993); *Painting Ind. of Hawaii v. U.S. Dept. of Air Force*, 756 F.Supp. 452, 453 (D.Hawaii 1990). A motion

for reconsideration is appropriate under Rule 60(b)(6) based on "any reasons justifying relief from the operation of the judgment," including a change in the controlling law. *Painting Ind. of Hawaii, supra*, 756 F.Supp. at 453. Relief under Rule 60(b)(6), however, requires a finding of "extraordinary circumstances." *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir.1985).

### B. *Arguments*

■ In support of its contention that this Court should reverse its December 27, 1994 order granting reconsideration and granting its cross-motion for summary judgment, American States essentially second-guesses the California Supreme Court's reasons for its depublication order and argues that the depublication mandates reconsideration of this Court's Order. California law is settled, however, that an Order of the California Supreme Court directing depublication is not to be construed as an opinion of the Court on the correctness of the decision or any law that is set forth in the opinion. California Rule of Court 979(e); *See Cynthia D. v. Superior Court*, 5 Cal.4th 242, 254 n. 9 (1993).

■ In any event, grounds for this Court's decision to grant reconsideration of the May Order exist independent of *Clary*. The California Supreme Court's action in denying review and ordering the depublication of *Clary* removes the support of California authority for the December order, but it does not otherwise negate the analysis of that order. In coming to its decision, this Court relied not only upon the reasoning of *Clary*, but upon decisions from other jurisdictions in an attempt to determine how California courts would decide this issue in the absence of any Supreme Court decision on point. The analysis turned on an argument the parties had not raised before Judge Caulfield, and which Judge Caulfield did not address: that trademark infringement could be an "infringement of title or slogan."[1]

---

1. In fact, Judge Caulfield's May order cites one case that held that use of a trademark in advertising could be both a misappropriation of an advertising idea *and* a title infringement. *J.A.*

*Brundage Plumbing v. Massachusetts Bay Ins.*, 818 F.Supp. 553 (W.D.N.Y.1993), *vacated because of settlement*, 153 F.R.D. 36 (W.D.N.Y. 1994). The May order implicitly rejected the

Thus, this Court's December Order did not reverse the disposition of a particular argument, but rather explored a new one. The December Order reached its conclusion on the basis of consideration of the linguistic arguments, fundamental principles of insurance policy interpretation, and the legal landscape. *Clary* was an important part of the landscape, but the other cases that have considered the issue were in accord. *See J.A. Brundage Plumbing v. Massachusetts Bay Ins.*, 818 F.Supp. 553 (W.D.N.Y.1993), *vacated because of settlement*, 153 F.R.D. 36 (W.D.N.Y.1994);[2] *P.J. Noyes Co. v. American Motorists Ins. Co.*, 855 F.Supp. 492, 494–95 (D.N.H.1994) (use of trademark "arguably falls within the ambit of advertising ideas or style of doing business or infringement of a title or slogan"); *Ross v. Briggs and Morgan*, 520 N.W.2d 432, 436 (Minn.App.1994) (use of trademarked name potentially infringed title).

Of courts that have considered whether trademark and trade dress infringement constitutes "advertising injury," *Brundage* is among the most explicit. It held that the use of trademarks is inherently a form of advertising. *Brundage*, 818 F.Supp. at 558 ("it is not possible to allege a claim for trademark, servicemark or trade name infringement without the infringing mark being used to identify the goods or services to the public. This use qualifies as advertising.").

In another decision with strong similarities to the instant case, *Advance Watch Co., Ltd. v. Kemper National Insurance Co.*, 878 F.Supp. 1034 (E.D.Mich.1995), the court held that claims of trademark and trade dress infringement were advertising injuries within the scope of an insurance policy. The *Advance Watch* Court examined both this Court's May 2, 1994 Order and the Court's December 27, 1994 Order granting reconsideration and partial summary judgment, and chose to follow this Court's December 27, 1994 Order. *Id.* at 1037–39. The *Advance Watch* Court was aware that the *Clary* decision had been depublished but found that it did not affect this Court's decision finding coverage for trade dress infringement, as the portion of the opinion which discusses trade dress does not cite *Clary* and is not affected by its depublication. *Id.* at 1039 n. 7.

This Court's December 27, 1994 Order finding that American States owed a duty to defend Reboans in the *Dunhill* action is in agreement with decisions from numerous other jurisdictions around the nation that have examined this same coverage provision. The December Order is not clearly erroneous. Summary judgment as to the *Dunhill* claims was appropriate, because advertising was indisputably involved. Treating the allegations in the *Hunting World* case as allegations of advertising injury is consistent with the case law notwithstanding the depublication of *Clary*.

Moreover, insofar as "advertising" is ambiguous, there was a duty to defend because any ambiguity should be resolved in favor of defending the insured. *See Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275–77, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (carrier must provide defense if suit potentially seeks damages that would be covered by the policy).

### III. CONCLUSION

The depublication of *Clary, supra*, by the California Supreme Court does not rise to

---

first part of *Brundage*'s holding: Misappropriation doctrine seems ill-suited to trademark cases. *See Toho Co. Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 794 (9th Cir.1981). The December order did not revise the analysis with regard to misappropriation.

The Ninth Circuit recently allowed misappropriation claims based on misuse of a name. *Newton v. Thomason*, 22 F.3d 1455, 1460–61 (9th Cir.1994). A name is, like a trademark, specifically protected by statute, and is—if Judge Caulfield's analysis is correct—therefore outside the scope of common-law misappropriation. The *Newton* court allowed the claims, but did not explicitly consider this argument.

2. In its moving papers for the December motion, American States argues that Ninth Circuit Rule 36–3 makes *Brundage* uncitable. That rule states that a disposition other than an opinion or an order designated for publication has no precedential effect and may not be cited by courts in this circuit.

This rule is directed at dispositions by courts within the circuit, since dispositions from other jurisdictions have no precedential effect even if they are published. There is no bar to citing a published or unpublished decision from another circuit, regardless of its precedential value within the other circuit.

the level of an "extraordinary circumstance" which would mandate relief under Rule 60(b)(6). As no California case is directly on point, the Court's analysis based largely upon case law from other jurisdictions and upon fundamental rules governing the interpretation of insurance policies still stands. Accordingly, American States' motion to reconsider this Court's December 27, 1994 Order is DENIED. Defendant shall submit a proposed form of judgment by July 14, 1995.

IT IS SO ORDERED.