Scott M. ROSS, M.D., Respondent,

v.

BRIGGS AND MORGAN,
Petitioner, Appellant,

BRIGGS AND MORGAN, Third-Party
Plaintiff, Petitioner, Appellant,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Third-Party
Defendant, Respondent.

No. C7–93–2568.

Supreme Court of Minnesota.

Dec. 22, 1995.

Michael R. Cunningham and Jonathan M. Redgrave, Minneapolis, for Appellant.

Jerome S. Rice and Stephen B. Young, Minneapolis, for Respondent Ross.

Jeffrey J. Bouslog and David M. Wilk, St. Paul, for Respondent St. Paul Fire & Marine.

## OPINION

COYNE, Justice.

The plaintiff Scott M. Ross, M.D., commenced this legal malpractice action complaining that the Briggs and Morgan law firm was negligent in representing him in connection with his termination of employment with Manuel O. Jaffe, M.D., and Skin Diseases, P.A., by reason of the firm's failure to tender the defense of that termination litigation to St. Paul Fire & Marine Insurance Company, Ross' commercial general liability insurer. Claiming that the policy required the insurer to defend and indemnify him for advertising injury liability, Ross alleged that he incurred damages of over $175,000 in attorney fees, $40,000 in settlement costs and the diversion of financial resources from his medical practice.[1] The law firm moved the trial court for summary judgment, asserting that the Fire & Marine policy provided no coverage for the claims alleged in Jaffe's complaint and that, accordingly, there was no basis for legal malpractice liability. The trial court granted the

motion and on Ross' appeal from the judgment, the court of appeals reversed and remanded the matter to the district court for trial on the merits of the plaintiff's claims. *Ross v. Briggs & Morgan,* 520 N.W.2d 432 (Minn.App.1994). We reverse and reinstate that summary judgment.

On December 21, 1985, Ross, then completing his medical training as a dermatologist, and Jaffe, acting on behalf of Skin Diseases, P.A., entered into an employment agreement which was to become effective on the first day of employment, August 1, 1986, and which purported to govern the terms and conditions of the employment relationship and also the restrictions on Ross' activities in the event of the termination of the employment. Among the provisions were three—paragraphs 5.4, 5.5 and 5.6—which defined a restrictive covenant and the restrictions on marketing and which identified liquidated damages for violation of those provisions and others of the contract. The employment did commence as anticipated on August 1, 1986, but by late March 1987, the relationship had deteriorated. Ultimately, Ross' employment was terminated by an agreement executed on April 18, 1987. The termination agreement referenced and reaffirmed the termination restrictions to which Ross had agreed in executing the original employment agreement and, in addition, contained provisions defining the severance of the parties' relationship.

A specific provision of the agreement required the prompt notification to patients and others of Ross' disassociation from Skin Diseases, P.A., and the parties' mutual agreement with respect to the contents of the notice. Ross later testified by deposition that because Jaffe was "stalling" and because he received no response to his proposed communications, he mailed a letter which he alone drafted to persons included on Skin Diseases' computerized mailing list. Printed on the letterhead of his newly formed practice, Skin Physicians, P.A., on which only Ross' name was listed, the letter conveyed the message that "[w]e are pleased to announce the opening of our new office" at an address specified. The letter also welcomed

his dismay at his lawyers' failure to tender defense of the action to his insurer—an activity that would have been prudent even though, in this case, futile.

patients to "our new luxurious office suites." There was, however, no direct mention of the cessation of Ross' association with Jaffe and Skin Diseases, P.A. The letter, dated April 30, 1987, was mailed to designated individuals either prior to or at the same time as a copy was sent to Jaffe. In addition, Ross placed advertisements in the May 24, 1987 edition of the Minneapolis Star and Tribune and the June 1987 edition of Minneapolis–St. Paul Magazine, using the name "Institute of Cosmetic and Laser Surgery," a name similar to that used by Skin Diseases, "Institute of Cosmetic Surgery and Hair Transplants."

In apparent anticipation of opening his own dermatology practice as the relationship between the parties further deteriorated in late March and early April, Ross had contacted insurance agent Joseph Byrne from the Insurance Mart on April 9, 1987 seeking insurance coverage for contents, theft, fire and public liability. Ross did not inform Byrne of the ongoing dispute with Jaffe.[2] The Fire & Marine issued its "Professional Office Package Policy," including commercial general liability coverage to Ross' newly named practice, Skin Physicians, P.A., effective April 15, 1987.[3] Among its protections, the policy indemnified Skin Physicians, P.A., for advertising injury liability:

> We'll pay amounts any protected person is legally required to pay as damages for covered personal injury or advertising injury that's caused by an offense committed while this agreement is in effect.

The policy defined "advertising injury" as follows:

> *Advertising injury* means injury caused by any of the following offenses that result from the advertising of your products or work:
> —libel or slander;
> —written or spoken material made public which belittles the products or work of others;
> —written or spoken material made public which violates an individual's right of privacy;
> —unauthorized taking of advertising ideas or style of doing business;

> —infringement of copyright, title or slogan.

Further, while the policy required the Fire & Marine to defend any claim for advertising injury asserted against the protected person, it excluded coverage for breach of contract:

> **Breach of Contract.** We won't cover advertising injury that results from the failure of any protected person to do what is required by a contract or agreement.
> But we won't apply this exclusion to the unauthorized taking of advertising ideas if the contract or agreement doesn't specifically prohibit such taking.

Finally, the policy provided that the insured could not "assume any financial obligation or pay out any money without our consent."

In a complaint dated May 18, 1987, Jaffe and Skin Diseases commenced an action against Ross claiming damages for breach of contract, tortious interference with advantageous business relations, misappropriation of trade secrets, deceptive trade practices, and misappropriation and conversion of funds and personal property and requesting an injunction and award of the liquidated damages specified in the contract. In an amended complaint served thereafter, Jaffe further alleged unfair competition at common law. A motion for a temporary injunction was served with the complaint. On June 6, 1989, Ross, Jaffe and Skin Diseases entered into a settlement pursuant to which Ross paid $40,000. Briggs and Morgan represented Ross throughout the proceedings which culminated in the settlement without an admission of liability. At no time did Ross or the law firm notify the Fire & Marine of Jaffe's claim or tender the defense of the claim to the Fire & Marine or obtain the insurer's consent prior to the settlement of the action.

Ross subsequently commenced this action, alleging that the law firm failed to tender or advise him to tender the defense of the Jaffe litigation to the Fire & Marine. Briggs and Morgan answered the complaint and then, by its third-party complaint sought indemnity and/or contribution from the insurer, asserting that the law firm's liability, if any, would only be based upon a determination that the

---

**2.** Byrne testified by deposition that knowledge of the conflict would not have affected Ross' eligibility for content and liability coverage.

**3.** Ross testified that Skin Physicians was formed on or about April 15, 1987, but the record indicates that it was not issued a certificate of incorporation until May 12, 1987.

insurer had a duty to defend and/or indemnify Ross in the Jaffe matter.[4]

Briggs and Morgan then moved the trial court for summary judgment on the basis that the commercial general liability policy did not cover the claims alleged in Jaffe's complaint and amended complaint because there was no allegation of any of the enumerated offenses defining advertising injury liability protection and because coverage was excluded by the breach of contract exclusion clause. It argued that, as there was no coverage, the insurer had no duty to defend or indemnify and that it was therefore not negligent in failing to tender the defense.

The Fire & Marine also moved for summary judgment, asserting that it had no obligation to the law firm by virtue of the policy it issued to Ross and that any obligation it might have owed Ross was extinguished when he breached the policy by settling the claim without first notifying and obtaining the insurer's consent.

The trial court granted Briggs and Morgan's motion, reasoning that while Ross need only demonstrate that any claim "arguably" falls within the scope of coverage for the duty to defend to arise, no coverage existed under this policy which would have obligated the insurer to defend against the Jaffe action. Concluding that, because of its decision, the Fire & Marine's motion had been rendered moot, it did not decide that motion.

On Ross' appeal from the judgment, the court of appeals reversed, holding that Ross' activities were clearly "advertising," that the claims in the Jaffe action were arguably covered by the policy and that the policy exclusions were inapplicable. We granted Briggs and Morgan's petition for further review.

■ To establish a claim of legal malpractice against the law firm, Ross was required to demonstrate (1) that an attorney-client relationship existed, (2) that the firm was negligent or in breach of contract, (3)

that the firm's acts were the proximate cause of Ross' damages, and (4) but for that negligence, Ross would have been successful in asserting a claim of coverage against the Fire & Marine. *See Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan,* 494 N.W.2d 261, 265 (Minn.1992); *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992); *Togstad v. Vesely, Otto, Miller & Keefe,* 291 N.W.2d 686, 692 (Minn.1980). Both parties to this appeal focused their arguments on the third element, proximate cause. If the alleged negligence of the law firm in failing to tender the defense of the Jaffe claim to the Fire & Marine is not the proximate cause of Ross' damages, as a matter of law Ross is unable to make out a legal malpractice claim. In order for proximate cause to be established, it must be demonstrated that, had the defense of the underlying case been tendered to the insurer, the insurer would have had a duty to defend the case as a matter of law.

■ Our inquiry in determining whether the insurer had a duty to defend requires the comparison of the allegations in the complaint and amended complaint in the underlying action with the relevant language in the commercial general liability policy. *See Garvis v. Employers Mutual Casualty Co.,* 497 N.W.2d 254, 256 (Minn.1993); *Prahm v. Rupp Constr. Co.,* 277 N.W.2d 389, 390 (Minn.1979). The Fire & Marine had a duty to defend if any part of the claims asserted against Ross in the underlying case "arguably" falls within the scope of coverage. *See Jostens, Inc. v. Mission Ins. Co.,* 387 N.W.2d 161, 165–66 (Minn.1986); *Grain Dealers Mut. Ins. Co. v. Cady,* 318 N.W.2d 247, 251 (Minn.1982).

■ The commercial general liability policy provides coverage for advertising injury if the injury is caused by one of five enumerated offenses resulting from advertising activity, a phrase defined in the policy itself. From the plain language of the provision, a

---

4. Of course, even if Jaffe's claim had come within the coverage of the Fire & Marine insurance policy, the Fire & Marine would not have been obligated to defend until the defense of Jaffe's claim were tendered to it. Furthermore, even if the Jaffe claim had come within the coverage of the insurance policy, the settlement of that claim

and the payment of or assumption of the obligation to pay $40,000 before the Fire & Marine was notified of the existence of the claim and given the opportunity to undertake defense of the claim constituted a breach of the insurance contract by the insured.

duty to defend may be established if there is a semantic connection between the policy's enumerated offenses and the claims made in the underlying case and if the offense arose in the course of advertising activity. *See St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys., Inc.*, 824 F.Supp. 583, 585 (E.D.Va.1993), *aff'd*, 21 F.3d 424 (4th Cir.1994).

 In reversing summary judgment, the court of appeals concluded that Jaffe's claims of deceptive trade practices and unfair competition were "arguably" covered by the policy clause "unauthorized taking of advertising ideas or style of doing business." *Ross v. Briggs and Morgan*, 520 N.W.2d 432, 435 (Minn.App.1994). It then concluded that Ross' use of the names "Skin Physicians, P.A." and "Institute of Cosmetic and Laser Surgery" was arguably covered by the clause "infringement of copyright, title or slogan." *Id.* at 436. Our inquiry is thus narrowed to the question of whether Jaffe's broad claims of "unfair, deceptive, or misleading trade practices actionable at common law," and unfair competition at common law are arguably within the scope of coverage of the two clauses identified under the advertising injury definition, as held by the court of appeals. In our view, they are not.

However one might characterize Jaffe's complaint and amended complaint, his action is framed in terms of a breach of contract, that is, Ross' breach with regard to the letter sent to identified patients, the unauthorized taking of a data base, and deceptive trade practices and unfair competition, and the thrust of Jaffe's prayer for relief, despite a gesture in the direction of compensatory and punitive damages, was for the injunction and the liquidated damages of $50,000 specified in each of the two contracts with Ross. Neither the complaint nor the amended complaint alleged a claim of unauthorized taking of advertising ideas or a style of doing business or the infringement of copyright, title or slogan. To equate one set of claims with those covered under the policy is to engage in a far too generous reading of the complaint and while it is not necessary that Jaffe plead in the language of the insuring document, his complaint leads us to observe that he would have been unable to demonstrate a covered advertising offense by virtue of the allegations. Moreover, if Jaffe's complaint can be read to allege an injury from conduct that could constitute an advertising offense, it is an injury that resulted from Ross' violation of the termination agreement and is, therefore, excluded from coverage by the unambiguous language of the insuring agreement. We therefore conclude that the trial court was correct in awarding Briggs and Morgan summary judgment on the basis that, even though the conduct of which Jaffe complained centered upon a form of advertising, the alleged wrongs fell outside the enumerated offenses contained in the policy and that Ross was unable to demonstrate the requisite elements of his legal malpractice claim.

Reversed and summary judgment reinstated.

STRINGER and GARDEBRING, JJ., took no part in the consideration or decision of this case.