Keating, J.
On November 20, 1963, the plaintiff delivered 300,600 pounds of vegetable oil to the Harbor Tank Storage Co. for storage in its tanks. The following month the storage *444 company became insolvent and was found to have insufficient oil in its possession to return all the oil the plaintiff had deposited. As a result, the plaintiff lost 70,000 pounds of oil, the value of which it now seeks to recover from Harbor Tank’s insurance carrier.
An insurance policy had been issued by the defendant to Harbor Tank on December 31, 1961, and renewed the following year. It covered the storage company against ‘ ‘ physical loss, physical damage or expense resulting and/or arising from, through, or in connection with the Assured’s legal liability * * * in respect to oils and similar comodities the property of others under their control and/or care, custody or possession and for which they may be legally liable in any way.” (Emphasis added.) The plaintiff is not named as an insured in the policy but brings this suit under a clause providing for direct payment to any claimants in the event of the storage company’s insolvency.
The oil with which we are concerned was, of course, a fungible commodity and the deposits of the various bailors, including the plaintiff, were not kept segregated but were commingled in the several large tanks of Harbor Tank. The entire amount of oil was treated as a community pool, from which all of the depositors would withdraw discrete amounts as they desired but in which it could not be determined whose oil was in any tank at a particular time. The only physical measurement of the amount of oil in this pool was by “ gauging ”—measuring the depth of the oil in the tanks and then by multiplying by various mathematical factors. Over a 10-year period, this method indicated a consistent shortage of 90,000 to 110,000 pounds. At the time of the insolvency, the oil was actually weighed, and a shortage of 85,000 pounds was discovered. No evidence was presented to explain this shortage.
The Supreme Court, New York County, entered judgment for $24,000 for the plaintiff upon a jury verdict. On appeal, the Appellate Division reversed, one Judge dissenting, and dismissed the complaint. The court held that the insurance policy covered only a physical loss of the oil by the storage company and that the plaintiff had failed to show that such a loss had occurred within the policy period.
*445 The plaintiff argues, as did the dissenting Justice at the Appellate Division, that physical delivery of the oil in question was made during the period in which the policy was in effect and that the failure to return the oil on demand was a ‘ ‘ physical loss ” within the meaning of the policy. The defendant argues on the other hand that this policy was, in essence, a casualty policy, that the term ‘ ‘ physical loss ’ ’ refers to such loss as destruction by fire and that the plaintiff has failed to establish that a loss of this kind took place here.
Essential, of course, to the construction of the phrase in question is an examination of the entire contract to determine its purpose and effect and the apparent intent of the parties (Kurek v. Port Chester Housing Auth., 18 N Y 2d 450; Matter of Schmith, 19 N Y 2d 398; see, also, 13 Appleman, Insurance Law and Practice, § 7383). In making such an examination, we note first that the provision immediately following the clause in question excepts specifically from coverage some eight different contingencies under which the bailee would not have been liable to the bailor. None of these contingencies is alleged to or could reasonably have accounted for the loss in question. In addition, the contract, unlike an ordinary casualty policy, provides coverage if the bailee is induced by fraud to give the property of the bailor to a third party.
These clauses demonstrate that the primary purpose of the policy was to cover .every possible contingency under which the insured would be liable to the bailor if it was not able to deliver the oil due to a physical loss of any kind. Under these circumstances we cannot say that the loss of the oil delivered by the bailor to the insured was not a physical loss within the meaning of the policy (cf. Employers Cas. Co. v. Holm, 393 S. W. 2d 363, 367 [Texas Ct. of Civ. App.]; Harman v. American Cas. Co., 155 P. Supp. 612, 614 [S. D., Calif.]). While it may reasonably be argued that the term ‘ ‘ physical loss ’ ’ should be read as the insurer would have us read it here, such a construction is by no means clear from either the language or purpose of the policy. An insurer may not accept premiums under the provisions of an ambiguous policy which the insured may be justified in believing provides a particular form of coverage and then avoid liability by arguing that the policy is inapplicable to the contingency. *446 To do so would permit “ the insurer * * * [to take] an unjust and unfair advantage of the insured and weaken the purpose for which the policies were issued.” (Harman v. American Cas. Co., supra, p. 614.)
In addition to the ‘ ‘ physical loss” provision, we believe that recovery would be justified here under the ‘‘ expense ’ ’ provision in the clause in question. If the bailee had remained solvent and was unable to deliver the oil, a suit would have been commenced against it, and the bailee would have been ultimately required to reimburse the bailor for the value of the nondelivered oil. This payment would have been an “ expense ” to the bailee “ resulting and/or arising from, through or in connection with the [its] legal liability * * * in respect to * * * the property of others under [its] control * * * for which [it was] * * * legally liable ”. This is clearly “a claim for which the policy would be liable ” but for the bankruptcy of the insured. As such the plaintiff may recover.
The order of the Appellate Division should be reversed and a new trial granted, with costs to abide the event.