J.A. BRUNDAGE PLUMBING & ROTO-ROOTER, INC., the Drain Doctor, Inc., and John A. Brundage, Plaintiffs,

v.

The MASSACHUSETTS BAY INSURANCE COMPANY, Defendant.

No. 92–CV–531A.

United States District Court, W.D. New York.

March 10, 1993.

Peter K. Sommer, Sommer, Oliverio & Sommer, Buffalo, NY, for plaintiffs.

Russell N. Brown, Sherry Robinson, Lustig & Brown, Buffalo, NY, for defendant.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to final disposition of this case before the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Pending for decision are Defendant's motion and Plaintiffs' cross-motion for summary judgment.

For the following reasons, Defendant's motion is denied, and Plaintiffs' cross-motion is granted.

### FACTS

The relevant facts are not in dispute. On July 23, 1990, John A. Brundage and his companies J.A. Brundage Plumbing & Roto–Rooter, Inc. and the Drain Doctor, Inc., were sued in this Court in an action entitled *Roto–Rooter Corp. v. J.A. Brundage Plumbing & Roto–Rooter, Inc., John A. Brundage, the Drain Doctor, Inc., and John A. Brundage, Jr.,* 92–CV–402A. This lawsuit asserted six causes of action based on the following facts.

Roto–Rooter owns both New York State servicemarks and United States trademarks for its name and services. It permits others to use these marks by granting licenses and franchises. On April 1, 1990, Roto–Rooter granted Brundage a written license and franchise to perform and sell sewer, drain and pipe cleaning services.

In ¶ 16 of the franchise agreement, Brundage promised not to compete with the Roto–Rooter trademarks or servicemarks by entering into any other sewer, drain or pipe cleaning business in the geographic territory in which the franchise agreement operated. Brundage also agreed to use the trademarks and servicemarks only as authorized in ¶ 8.

Roto–Rooter alleges that Brundage violated this franchise agreement by:

1. Failing to maintain service personnel in Roto–Rooter uniforms.

2. Inappropriately and improperly using the Roto–Rooter trademarks in connection with sales and service performed by unauthorized entities.

3. Failing to maintain separate telephone lines, equipment, vehicles, employees and facilities in rendering Roto–Rooter business.

4. Entering into a competing business called "The Drain Doctor."

When Brundage failed to cure these alleged violations, Roto–Rooter terminated Brundage's franchise agreement. Roto–Rooter then instituted the underlying lawsuit alleging that Brundage's acts constituted:

1. Federal trademark and servicemark infringement.

2. False designation of origin.

3. State servicemark infringement.

4. Dilution and injury to business reputation.

5. Unfair competition.

6. Breach of contract.

Roto–Rooter demanded that the Court declare that Brundage breached the franchise agreement, infringed Roto–Rooter's registered marks, falsely designated the source of the services in violation of federal law, diluted the quality of Roto–Rooter's marks and unfairly competed with Roto–Rooter. Roto–Rooter also demanded that Brundage be preliminary and permanently enjoined from using the designation "ROTO–ROOTER" or any like mark, together with damages in excess of $50,000.

Brundage notified its primary insurance carrier, Massachusetts Bay Insurance Company, of the underlying suit and requested defense of the action. Massachusetts Bay denied coverage, asserting that the complaint did not fall within either the personal injury coverage or the advertising injury coverage in the policy.

On August 10, 1992, Brundage instituted the instant action seeking a declaration that coverage was provided under the policy.

In September of 1992, the underlying action was settled at no cost to the parties. At issue are Plaintiff's attorneys fees in the underlying action.

Defendant Massachusetts Bay now moves for summary judgment. Plaintiffs have cross-moved for summary judgment.

## DISCUSSION

The relevant portions of the insurance policy provide as follows:

### I. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies.... We will have the right and duty to defend any "suit" seeking those damages.

\* \* \* \* \* \*

b. This insurance applies to "personal injury" only if caused by an offense:

(1) committed in the "coverage territory" during the policy period; and

(2) arising out of the conduct of your business excluding advertising, publishing, broadcasting or telecasting done by you or for you.

c. This insurance applies to "advertising injury" only if caused by an offense committed:

(1) In the "coverage territory" during the policy period; and

(2) In the course of advertising your goods, products or services.

The policy defines "personal injury" as: Injury, other than "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment,

b. Malicious prosecution;

c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

The policy defines "advertising injury" as: Injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

b. Oral or written publication of material that violates a person's right of privacy.

c. Misappropriation of advertising ideas or style of doing business.

d. Infringement of copyright, title or slogan.

The policy excludes coverage for "advertising injury" arising out of:

Breach of contract, other than misappropriation of advertising ideas under an implied contract.

Since the underlying suit has been settled at no cost, indemnification under the policy is not an issue. The question here is whether the Defendant had a duty to defend the underlying action and is therefore obligated to pay the costs of defense.

The parties agree that New York law governs this dispute. Under New York law, an insurer's duty to defend its insured is determined by comparing the allegations of the complaint to the policy language. *Servidone Construction Company v. Security Insurance Company,* 64 N.Y.2d 419, 423–24, 488 N.Y.S.2d 139, 477 N.E.2d 441 (1985). The insurer is required to provide a defense to any action within the policy coverage, even if that action is groundless. *Avondale Industries, Inc. v. Travelers Indemnity Company,* 123 F.R.D. 80, 82 (S.D.N.Y.1988), *aff'd,* 887 F.2d 1200 (2d Cir.1989), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). As stated by the New York Court of Appeals:

The duty [to defend] is not contingent upon the insurer's ultimate duty to indemnify should the insurer be found liable, nor is it material that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within the exclusionary provisions. Rather, the duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which

bring the action within the protection purchased.

*Seaboard Surety Company v. Gilette Company,* 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984). An insurer's obligation to defend is determined by examining the entire insurance contract to determine its purpose and intent. *Murray Oil Products v. Royal Exchange Assurance Company,* 21 N.Y.2d 440, 445, 288 N.Y.S.2d 618, 235 N.E.2d 762 (1968).

Insurance policies are contracts to which the ordinary rules of contractual interpretation apply. The goal of contract interpretation is to give effect to the intention of the parties. If the contract language is clear and explicit, it governs. If it is ambiguous, the court must interpret the language in context with regard to its intended function in the policy to give effect to the reasonable expectation of the insured. *Murray Oil Products v. Royal Exchange Assurance Co., supra,* 21 N.Y.2d at 445, 288 N.Y.S.2d 618, 235 N.E.2d 762; *A. Meyers & Sons Corp. v. Zurich American Insurance Group,* 74 N.Y.2d 298, 302–03 (1989).

Furthermore, terms which are not defined in the policy are to be given the meaning ascribed to those terms in the common law or as they ordinarily would be understood by laypersons. *Ruder & Finn, Inc. v. Seaboard Surety Co.,* 52 N.Y.2d 663, 671, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981). If this rule does not resolve the ambiguity, the Court must then resolve it against the insurer. *See, e.g., Id.* at 671, 439 N.Y.S.2d 858, 422 N.E.2d 518. The complaint must be liberally construed to "protect against poorly or incompletely pleaded cases as well as those artfully drafted." *Id.* at 669, 439 N.Y.S.2d 858, 422 N.E.2d 518.

Plaintiff contends that each of Roto–Rooter's first five causes of action allege "advertising injury" within the policy definition, any one of which is sufficient to trigger the insurer's duty to defend. Plaintiff concedes that subsections (a) and (b) of the definition of advertising injury do not apply. Rather, Plaintiff seeks coverage under subsection (c) or (d)—i.e., advertising injury arising out of

"misappropriation of advertising ideas or style of doing business" (subsection (c)) or "infringement of ... title or slogan" (subsection (d)). Both of these subsections will. be addressed in turn.

## A. *Misappropriation of Advertising Ideas or Style of Doing Business*

■ Addressing subsection (c) first, the policy does not define "advertising ideas" or "style of doing business." Nor do these terms have clear definitions in the common law. However, in the ordinary sense of these terms, misappropriation of an "advertising idea" would mean the wrongful taking of the manner by which another advertises its goods or services. This would include the misuse of another's trademark or trade name.

A trademark is defined under the federal statute as "any word, name, symbol or device or any combination thereof, adopted and used by manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." *15 U.S.C. § 1127.* A servicemark is defined as "a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of another." *Id.* Similarly, one's mark and name is an integral part of an entity's "style of doing business." Such misappropriation of "style of doing business" would include trademark, trade name or servicemark infringement.

Defendant argues that the New York courts strictly construe the advertising injury liability coverage provided by a general liability policy, citing *A. Meyers & Sons Corp. v. Zurich American Insurance Group,* 74 N.Y.2d 298, 546 N.Y.S.2d 818, 545 N.E.2d 1206 (1989), and *Jerry Madison Enterprises, Inc. v. Grasant Manufacturing Co.,* 1990 WL 13290 (S.D.N.Y.1990). In both of these cases, the courts denied coverage under the "advertising injury" clauses in the contracts at issue.

In *A. Meyers & Sons,* the insured sued for a declaratory judgment requiring the insurer to defend a patent infringement claim pending before the International Trade Commission. The plaintiff in the underlying action had alleged that the insured infringed its patents by importing and selling infringing plastic fasteners. In affirming the grant of summary judgment to the insurer, the court held that the infringement did not occur in the course of the insured's advertising activities. The fact that the insured had circulated a price list for the infringing fasteners and that the plaintiff had complained of it in the underlying case did not mean that the claim arose in the course of the insured's advertising activities because there was no claim that the price list made false or deceptive claims or that it harmed the plaintiff.

In *Jerry Madison Enterprises, Inc. v. Grasant Manufacturing Co., supra,* the insured sought a declaratory judgment to require its insurer to defend a copyright infringement claim. Citing *A. Meyers & Sons,* the court held that the underlying complaint alleged no advertising injury, and therefore there was no coverage under the policy. *Jerry Madison* appeared to. expand upon *A. Meyers & Sons* because the underlying plaintiff in *Jerry Madison* actually made allegations concerning the insured's advertising activity. The complaint alleged that the insured had "placed on the market" jewelry which infringed plaintiff's designs and that the insured sold the infringing jewelry through advertising, and requested the court enjoin the insured from marketing the infringing jewelry. According to the court, these allegations did not bring the claim within the policy coverage because the insured's advertising was not alleged to have infringed the copyright. As analyzed by the court, "the phrase 'occurring in the course of the insured's advertising activities' does not encompass the sale and manufacture of copyrighted [products]." 1990 WL 13290 at *4.

These cases clearly require a causal connection between "advertising injury" and "advertising activities"—i.e., the injury must occur as a result of advertising. Since advertising was not a necessary ingredient in either the copyright infringement case or the patent infringement case, coverage was denied.

This case, in contrast to *Jerry Madison* and *Meyers,* does allege "advertising injury" arising out of advertising activities. Accord-

ingly, contrary to Defendants' arguments, these cases do not preclude a finding of coverage here.

For example, Count I of the complaint alleges that "[t]he use by Defendants of the name and mark ROTO–ROOTER *in connection with the advertising* and sale of sewer, drain and pipe cleaning services, constitutes an infringement of Roto–Rooter's federally registered marks . . ." (¶ 25) (emphasis added). Thus, the complaint alleges that the use of the mark in connection with advertising caused injury to the Plaintiff. The count supplies the essential ingredient found missing in *Madison* and *Meyers*—i.e., injury arising out of advertising. Defendant's argument otherwise ignores the relevant language in the claim quoted above.

The second claim in the complaint alleges that "the use by Defendants of the designation ROTO–ROOTER in connection with the business of offering sewer and drain cleaning services, tends falsely to represent or designate that the Defendants are licensed, sponsored by or otherwise affiliated with Roto–Rooter . . . which has damaged and is likely to continue to damage Roto–Rooter" (¶ 28). This claim, liberally construed, also alleges advertising injury arising out of advertising activities.

"Advertising" is defined by Black's Law Dictionary as:

> To advise, announce, apprise, command, give notice of, inform, make known, publish. To call a matter to public attention by any means whatsoever. Any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business and includes . . . statements and representations . . . contained in any notice, handbill, sign, catalog, or letter or printed on or contained in any tag or label attached to or accompanying any merchandise.

*Black's Law Dictionary* 54 (6th ed. 1990). The use of the tradename "ROTO–ROOT-ER" in connection with offering sewer and drain cleaning necessarily implies advertising in the ordinary meaning of that term.

Count III alleges that Defendants' use of the name ROTO–ROOTER "in connection with the sale, offering for sale, and/or advertisement of sewer, drain and pipe cleaning services in the State of New York" is likely to cause infringement of Roto–Rooter's state servicemark, in violation of the General Business Law. Again, as with Count I, this count alleges advertising injury arising out of advertising activity.

Count V alleges that Defendants' "continued advertisement and sale of sewer and drain cleaning services in New York under the ROTO–ROOTER designation constitutes a misappropriation of plaintiff's good will . . ." to the damage of Roto–Rooter. Again, this claim alleges advertising injury arising out of advertising activity.

Accordingly, four claims of the complaint are sufficient to generate coverage under the policy.

In *Madison* and *Meyers*, the courts found that one could allege a claim for copyright or patent infringement without advertising ever occurring. Trademark or tradename infringement, in contrast, necessarily involves advertising, or use, of the mark or name to identify the merchants's goods or services. Thus, where it is possible to state a claim for patent infringement or copyright infringement without necessarily alleging that such activities occurred in advertising one's goods, it is not possible to allege a claim for trademark, servicemark or trade name infringement without the infringing mark being used to identify the goods or services to the public. This use qualifies as advertising under the definition above.

But even if a more narrow definition of advertising were used—so that "advertising" is not equivalent to "use" of the mark—the complaint in this case alleges that the injury here occurred as a result of advertising activity. Accordingly, coverage exists under the policy.

## B. *Title or Slogan Infringement*

■ Subsection (d) covers advertising injury arising out of "infringement of copyright, title or slogan." Plaintiff concedes that the underlying complaint does not allege a claim for copyright infringement. The question is whether it alleges a claim for

"title or slogan infringement." Defendant would lump title or slogan infringement into the same category as copyright infringement, reading them interchangeably.

"Title" and "slogan" are not defined in the policy. Accordingly, it is necessary to look to the meaning of these terms in the common law and in ordinary language. *Ruder & Finn, Inc. v. Seaboard Surety Co., supra*, 52 N.Y.2d at 671, 439 N.Y.S.2d 858, 422 N.E.2d 518. "Title" is defined as: "A mark, style or designation; a distinctive appellation; the name by which anything is known." *Black's Law Dictionary* 1485 (6th ed. 1990). As to trademarks,

> A title may become a subject of property; as one who has adopted a particular title for a newspaper, or other business enterprise, may, by long and prior usage, or by compliance with statutory provisions as to registration and notice, acquire a right to be protected in the exclusive use of it.

*Id.* Clearly, then, infringement of "title" can include trademark or tradename infringement.

Similarly, infringement of slogan can also include trademark or tradename infringement. "Slogan" is defined as follows:

> Section 7:5 Slogans as Marks.
> Neither in the common law nor the Lanham Act is their any reason why a plurality of words cannot function as a mark to identify and distinguish goods or services. A slogan or any other combination of words is capable of trademark significance, if used in such a way as to identify and distinguish the seller's goods or services from those of others.
> Under common law unfair competition principles, slogans have long been protected against use by others so as to be likely to confuse purchasers ... a slogan might also incorporate a separate trademark, such that both the slogan and the mark will be protectable; for example, "You are in good hands with ALLSTATE."

*McCarthy, Trademarks and Unfair Competition (2 Ed.1984).*

Accordingly, trademark or tradename infringement falls within the definition of "advertising injury" under both subsections (c) and (d). The complaint in this case is therefore covered by the contract of insurance.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied, and Plaintiff's cross-motion for summary judgment is granted.

**SO ORDERED.**