**POOF TOY PRODUCTS, INC., a Michigan corporation, and Raymo Dallavecchia, Plaintiffs,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland corporation, Defendant.**

No. 94–CV–74695–DT.

United States District Court,
E.D. Michigan,
Southern Division.

June 27, 1995.

Ernest I. Gifford, Birmingham, MI, for plaintiffs.

Michael L. Updike, Farmington Hills, MI, for defendant.

### ORDER & OPINION GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

BORMAN, District Judge.

This matter is before the Court on Plaintiffs' motion for summary judgment. Plaintiffs filed this action with the Court on November 18, 1994 seeking, essentially, an order directing Defendant to defend Plaintiffs in a lawsuit currently pending with the United States District Court for the Southern District of California. It is claimed that this duty to defend arises from a commercial general liability insurance policy issued by Defendant United States Fidelity and Guaranty Company (USF & G) to Plaintiff, with the coverage period from October 21, 1993 to October 21, 1994.

The underlying suit was brought, on May 5, 1994, by Andrea Steorts against Plaintiffs in the present suit, Poof Toy Products Inc. and Raymo Dallavecchia (hereinafter Poof Toys), among others, and alleged 18 counts based on federal, state and common law. In sum, the Steorts complaint alleged that plaintiff Steorts had created certain foam-material toys, known as "bath stickers"[1] and "fuzzles"[2] which were the subject of various copyrights and trademarks. With sales of the bath stickers and fuzzles increasing, and through the efforts of the Der–Tex defendants in the underlying suit, Steorts entered into an agreement with Der–Tex to manufacture her products. Thereafter, Plaintiff learned that her fuzzles were being sold in Target stores under the Poof Toys label. She also alleges that her "Tubasaurs"[3] product, a prototype of which she had given to Der–Tex to manufacturer earlier in 1993, was sold at Wal–Mart stores throughout the United States, as the products of defendant Poof Toys, using the name "Tub–O–Saurus." Steorts Complaint, ¶ 40. Of the 18 Counts alleged in the Steorts complaint, eight were directed at defendants/Plaintiffs Poof Toys. Factual allegations addressing Poof Toys's actions included: Misappropriation of Trade Secrets (Count VI); Copyright Infringement (Count VII); Trademark and Trade Dress Infringement and Unfair Competition (Count IX); and Common Law Unfair Competition (Count XIII).

The only issue posed by Plaintiff's motion is whether any allegations in the underlying Steorts complaint constitute "advertising injury" within the meaning contemplated by the parties to the USF & G policy and therefore invokes Defendant's duty to defend. The policy at issue is the standard form post–1986 Commercial General Liability (CGL) policy. The Insurance Services Office publishes standard forms which are universally used in the property and casualty insurance industry. In 1986, the forms were revised to include the current definitions and exclusion for "advertising injury."

The policy states that the insurer will "have the right and duty to defend any 'suit' seeking those damages [to which this coverage part applies]." (Plaintiff's exhibit A, policy # 1MP30010030602, effective 10/21/93, hereinafter Policy, p. A65). Coverage under the policy includes damages for " 'advertising injury' caused by an offense committed in the course of advertising your goods, products or

---

1. Bath stickers were silhouette pieces cut out of brightly colored foam rubber which formed the shape of alphabet letters, numbers, animals, and animals in combination with numbers. Intended primarily to be children's bathtub toys, the bath stickers float in water and, when wet, stick to hard surfaces, such as bathtubs and tile walls. Steorts Complaint, ¶¶ 19, 20.

2. Fuzzles were three-dimensional versions of the bath stickers which consisted of multiple interlocking pieces, like puzzle pieces, which could be disassembled and reassembled into various three-dimensional animals and other shapes.

Steorts Complaint, ¶¶ 20, 21. Six fuzzles were created and marketed in 1989 and 1990 and were known as "Franklin Frog," "Greta Gecko," "Ollie Gator," "Spike Stegosaurus," "Boris Tyrannosaurus," and "Emily Bronosaurus." Steorts Complaint, ¶ 23.

3. This product was described by Steorts as "two disassembled three-dimensional dinosaur fuzzles and assorted flat dinosaur bath stickers, all placed together in [a clear plastic] tub." Steorts Complaint, ¶ 40.

services" provided the offense was committed in the "coverage territory" during the policy period. (Policy, p. 65). "Advertising Injury" is defined by the policy as "injury" arising out of one or more of the following offenses:

a. Oral or written publication or material that slanders of libels a person or organization or disparages a person's or organization's goods products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.[4]

(Policy, pp. 69–70).

Plaintiff asserts, and Defendant does not contest, (Defendant's Brief in Answer, p. 9), that as a federal court sitting in diversity jurisdiction in the State of Michigan, this Court must apply the Michigan substantive law. Michigan law requires a court to apply the law of the state where the insurance policy was issued. *Irons Home Builders, Inc. v. Auto–Owners Ins. Co.,* 839 F.Supp 1260, 1264 (E.D.Mich.1993). In this case, the policy was issued in Michigan. (Policy, p. 3).

In Michigan, an insurance policy is a contract; and, as with any contract, the rights of the parties are determined by the terms of their agreement, in this case the insurance policy. *Fragner v. American Community Mutual Ins. Co.,* 199 Mich.App. 537, 542, 502 N.W.2d 350 (1993); *Accord Eghotz v. Creech,* 365 Mich. 527, 530, 113 N.W.2d 815 (1962). To define terms used within a policy, a court first looks to the meaning given in the policy or, if no definition is given, their meaning is interpreted in accordance with their common meaning. *Allstate Insurance v. Freeman,* 432 Mich. 656, 443 N.W.2d 734 (1989); *See also Upjohn v. New Hampshire Ins. Co.,* 438 Mich. 197, 206–07, 476 N.W.2d 392 (1991) (clear, unambiguous language must be considered in its "plain and easily understood" sense).

Where there is no ambiguity in the policy's language, its construction is a question of law for the trial court's determination. *Wilson v. Home Owners Insurance Co.,* 148 Mich.App. 485, 490, 384 N.W.2d 807 (1986); *Accord Fragner,* 199 Mich.App at 540, 502 N.W.2d 350. Ambiguity exists when, after reading the policy, reasonable persons could differ as to its meaning. *Id.* In contrast, an insurance contract is clear if it could only be understood in one way. *Id.*

Courts construe ambiguous language in insurance policies against the insurers, who almost always draft the policies, and in favor of the insured. *Allstate v. Freeman,* 432 Mich. at 656, 443 N.W.2d 734; *Reurink Bros. Star Silo, Inc. v. Maryland Casualty Co.,* 131 Mich.App. 139, 146, 345 N.W.2d 659 (1983) ("Where there is a dispute over the meaning of the terms of an insurance contract, any doubts are to be resolved in favor of the insured.").

The duty to defend an insured is "separate and severable" from its duty to indemnify. *Reurink Bros.,* 131 Mich.App. at 142, 345 N.W.2d 659. Therefore, it is possible that a duty to defend exists even where it is unlikely the insurance company would be required to pay. *See Detroit Edison Co. v. Michigan Mutual Ins. Co.,* 102 Mich.App. 136, 140, 301 N.W.2d 832 (1980) (the duty to defend extends even to groundless, false or fraudulent allegations).

An insurance company's duty to defend the insured arises from the allegations in the third party's complaint against the insured. *Detroit Edison,* 102 Mich.App. 136, 141–42, 301 N.W.2d 832 (1980). However, it is necessary to look beyond the precise language of the pleadings to determine whether the actual cause of injury can reasonably be understood to come within the coverage of the policy. *See Allstate v. Freeman,* 432 Mich. at 662, 443 N.W.2d 734; *Detroit Edison,* 102 Mich.App. at 142, 301 N.W.2d 832. There is a duty when the allegations "*even arguably* come within the policy coverage." *Id.* at 142, 301 N.W.2d 832 (emphasis in

**4.** Insofar as the instant insurance policy clearly states that advertising injury includes infringement of copyright, that is also a ground for granting Plaintiff's motion for summary judg-

ment because the underlying California complaint alleges copyright infringement in Count VII.

original). Even if only a minority of the theories or claims fall within the policy's coverage, the duty to defend the entire suit exists. *Id.* at 142, 301 N.W.2d 832; *Reurink Bros.*, 131 Mich.App. at 142, 345 N.W.2d 659 ("If any theories fall within the policy, the insurer owes a duty to defend the suit.").

To find coverage under a policy, the Court must find: 1) allegations of fact constituting one of the enumerated "advertising injury" offenses; 2) a causal element, i.e., that the advertising activities/offenses caused the alleged injuries; and 3) that the injury complained of does not fall within an enumerated exception to coverage.

**(1) Enumerated Offenses.**

    a. "Misappropriation of advertising ideas or style of doing business:" Trademarks and Trade dress.

■ Count VIII of the California complaint alleges trademark, trade dress and unfair competition in violation of 15 U.S.C. § 1125 (the Lanham Act). The Lanham Act defines trademarks as "any word, name, symbol, or device or any combination thereof" used by any person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. Marks which are suggestive, arbitrary or fanciful are protected under the Act because they are inherently distinctive and thus, serve to identify the source of the product. *Two Pesos, Inc. v. Taco Cabana, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992) (interim edition and therefore subject to withdrawal or editing).[5]

■ "'Trade dress' involves the total image of a product and may include features such as shape, color or color combinations, texture, graphics, or even particular sales techniques." *John H. Harland Co. v. Clarke*

*Checks, Inc.*, 711 F.2d 966, 980 (1983). Trade dress is most frequently used to indicate the packaging or labeling of goods, but the design of the product itself may also constitute protectable trade dress. *Id.* Trade dress and trademarks are protected under § 1125 of the Act which prohibits any person from using a term, name, symbol or device, or any combination thereof, to which it is likely to confuse, mistake or deceive as to the manufacturer, origin or description of a good or service. 15 U.S.C. § 1125. Protection of trademarks and trade dress serves to "secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Two Pesos,* —— U.S. at ——, 112 S.Ct. at 2760.

■ "Style of doing business," as it appears in the insurance policy, refers to a company's "comprehensive manner of operating its business." *St. Paul Fire and Marine Ins. Co. v. Advanced Interventional Systems, Inc.*, 824 F.Supp. 583, 585 (E.D.Va.1993). Several courts have found that allegations of trademark or trade dress infringements are within the meaning of this phrase, and therefore, that the policy provided coverage.

In *P.J. Noyes Co. v. American Motorists Ins. Co.*, 855 F.Supp. 492 (D.N.H.1994), the third party's complaint alleged that Noyes had infringed upon its trademark by use of the name "Dustfree Precision Pellets" in the advertising, literature and packaging of food pellets for laboratory animals. Interpreting the identical 1986 CGL language at issue here, the court held that the underlying suit came within the policy's coverage. It reasoned: "But for the use of the term in the packaging, literature and advertisements, there would have been no trademark infringement." *Id.* at 495.

Although finding that patent infringement alone did not reach the requisite pervasive similarity necessary to prove misappropria-

---

5. The proper inquiry to determine if a trademark or a trade dress is protected under § 43(a) of the Lanham Act is whether it is inherently distinctive, and thus is capable of identifying the product as coming from a specific source. *Two Pesos,* —— U.S. at ——, 112 S.Ct. at 2760. To prevail on a trade dress claim infringement un-

der § 43(a), the design not only need be inherently distinctive, it must be also be nonfunctional, i.e., not one of only a limited number of options for the particular type of product. *Id.* This is to ensure that competition would not be unduly hindered by the Act. *Id.*

tion of a style of doing business, the court in *St. Paul Fire and Marine Ins. Co. v. Advanced Interventional Systems, Inc., supra,* noted that trade dress infringement "expresses essentially the same concept" as the term "style of doing business." 824 F.Supp. at 585.

■■■ It is not necessary that the claims even be labeled trade mark or trade dress claims to fall within the policy's coverage. For example, in *Ross v. Briggs & Morgan,* 520 N.W.2d 432 (Minn.1994), the Minnesota Supreme court found claims alleging that the insured doctor had sent letters to potential clients, on a list stolen from his former employer, which used names and slogans similar to those used by his ex-employer, suggested that the insured misappropriated the advertising ideas and entire style of doing business of his former employer. Therefore, the unfair competition and deceptive trade practices claims, in essence alleging the insured was trying to pass himself off as his competitor, were arguably covered by the "unauthorized taking of advertising ideas or style of doing business clause." *Id.* at 435.

The district court in *J.A. Brundage Plumbing & Roto–Rooter, Inc. v. Massachusetts Bay Ins. Co.,* 818 F.Supp. 553 (W.D.N.Y.1993) concluded that "one's mark and name is an integral part of an entity's 'style of doing business.'" *Id.* at 557. Therefore, "[s]uch misappropriation of 'style of doing business' would include trademark, trade name or servicemark infringement." *Id.*

Earlier this year in *Advance Watch Co. v. Kemper National Ins.,* Chief Judge Cook addressed circumstances very similar to those present in the instant case. 878 F.Supp. 1034 (1995) (interim edition). In *Advance Watch,* the underlying complaint involved a pen manufacturer's claims that the insured had infringed it trademarks and trade dress through the manufacture, sale and advertising of pens designed to pass off their products as those of another well-known pen company. *Id.* at 1039. After reviewing the applicable case law, Judge Cook concluded that " 'misappropriation of style of doing business,' though not ambiguous, is broad enough to encompass claims

that the insured copied a design explicitly protected by trademark." *Id.* at 1041–42.

A Wisconsin appellate court recently held that misappropriation of customer information and market strategy through the luring of competitor's agent in order to obtain its customers was not covered advertising injury. *Atlantic Mutual Insurance Co. v. Badger Medical Supply Co.,* 191 Wis.2d 229, 528 N.W.2d 486 (Wis.App.1995). However, the court was careful not to preclude all trade dress claims. First it noted that "style" of doing business could include "distinctive sales technology." *Id.* at 528 N.W.2d 490. Second, it declared that a misappropriation of a style of doing business may be covered, if it qualifies for protection under the criteria set forth in *Two Pesos, supra,* i.e., if it is inherently distinctive, has acquired distinctiveness or if there is a likelihood of confusion.

Upon reconsideration, the district court in *American Economy Ins. Co. v. Reboans,* No. C–92–4341–DLJ, 1995 WL 379874 (Dec. 27, 1994 N.D.Ca.) (Jensen, J.), ordered the insurer to defend Reboans because it was objectively reasonable for Reboans (the insured) to expect that the definition of advertising injury would include a claim for trade dress infringement in light of numerous courts' conclusions that "misappropriation of style of doing business" encompasses trade dress infringement. *Reboans,* Slip op. at 19 (citations omitted). Therefore, allegations that the insured misappropriated the third party's trade dress and identifiable logo in its advertising to "pass off" its products as those of the third party were within the policy's coverage. *Id.* at 20.

For all the reasons discussed in the above cases, the claim in Count VIII of the underlying complaint for trademark and trade dress infringement constitute an "advertising injury," under the enumerated definition "misappropriation of advertising ideas or style of doing business."

b. "Infringement of copyright, title or slogan."

■■■ Infringement of copyright, title or slogan are other offenses enumerated explicitly enumerated as advertising injuries under

the policy. Briefly, these issues will be addressed. Note, however, that once one claim is found to be *"arguably"* within the policy's coverage, the insurer has a duty to defend even if all the other claims are not subject to coverage. *Detroit Edison,* 102 Mich.App. at 142, 301 N.W.2d 832.

Count VII of the California complaint alleges infringement of copyright through the manufacture, shipment, sale, and distribution of products substantially similar to Steort's fuzzle products. Although the underlying complaint does not have a count entitled "infringement of title or slogan," the factual allegations that Poof Toys used Steort's copyrighted "names and titles," including "Dino Fuzzles", "Greta Gecko," and "Tubasaurs," arguably constitute an infringement of title or slogan. (Complaint, ¶ 110, p. 29–30). *See J.A. Brundage,* 818 F.Supp. at 559 (relying on the *Black's Law Dictionary* definition of "title" as "a mark, style or designation; a distinctive appellation; the name by which anything is known," *Black's Law Dictionary,* 1485 (6th ed. 1990), the court held that infringement of title can include trademark or tradename infringement, and therefore that trademark and tradename infringement claims fall within subsections (c) and (d) of the policy's definition of advertising); *Ross,* 520 N.W.2d at 436 (Use of names similar to those used by his competitor was arguably covered by "infringement of copyright, title, slogan" clause); *American Economy Insurance Company v. Reboans, Inc.,* No. C–92–4341–DLJ, 1995 WL 379874 (N.D.Calif. Dec. 27, 1994) (upon reconsideration) (Allegations in third party complaint that insured had palmed off their goods as the third party's by their false labeling and misrepresentations to the consuming public and copying their distinctive logo gave rise to a duty to defend because the allegations constitute infringement of title); *P.J. Noyes,* 855 F.Supp. at 494–95 ("the allegation that Noyes used the name 'Dustfree Precision Pellets' in the advertising, literature and packaging, arguably falls within the ambit of misappropriation of advertising ideas or style of doing business or infringement of a title or slogan").

Thus, the Court finds three intellectual property offenses defined in the insurance policy as advertising injuries which may bring the California suit within the policy's coverage—infringement of: trademark and trade dress, copyright, and title or slogan.

■■ However, the determination that an enumerated offense has been alleged does not alone bring the underlying suit within the coverage of the policy. Another required component of a prima facie duty to defend case, is a causal element between the advertising activities and the harm alleged, i.e., the infringement.

(2) Causal Element.

Courts have repeatedly rejected an insured's argument that advertising is part and parcel of selling and that an offense occurs during selling is an offense committed in the course of the advertising. *National Union Fire Ins. Co. PA. v. Siliconix,* 729 F.Supp. 77, 78 (C.D.Cal.1989); *Accord Meyers & Sons Corp. v. Zurich American Ins.,* 74 N.Y.2d 298, 546 N.Y.S.2d 818, 820–21, 545 N.E.2d 1206 (1989); *Iolab Corp. v. Seaboard Sur. Co.,* 15 F.3d 1500, 1506 (9th Cir.1994); *Aetna Casualty & Surety Co. v. Centennial Ins. Co.,* 838 F.2d 346, 352 (9th Cir.1988) (offering and selling of goods to individual customers were not activities contemplated by clause for coverage of advertising injuries). *Atlantic Mutual Ins. Co. v. Brotech Corp.,* 857 F.Supp. 423, 429 (E.D.Pa.1994) (even if patent infringement was an enumerated act in the definition of advertising activity, which it is not, a claim for patent infringement would not trigger a duty to defend because it does not arise out of or occur in the course of advertising but rather is the unauthorized production, use or sale of a patented product); *New Hampshire Ins. Co. v. R.L. Chaides Construction Co., Inc.,* 847 F.Supp 1452 (N.D.Cal.1994) ("The acts of making, selling or using simply do not arise out of the insured's advertising activities").

■■ The majority rule is that the advertising injury must have a causal connection with the advertising activities. *Bank of West v. Superior Court,* 2 Cal.4th 1254, 833 P.2d 545, 552, 10 Cal.Rptr.2d 538. Without the requirement of a causal connection, almost every claim related to a insured's business would be covered by the advertising injury

clause since almost every product or service offered is subject to at least some form of advertising. *Id.,* 10 Cal.Rptr.2d 538, 833 P.2d at 553. Because of the clause: "caused by an offense committed in the course of advertising goods, products or services;" a causal connection between the injury and the advertising is "clearly required for coverage." *Advance Watch,* 878 F.Supp. at 1038. Where the complaint does not identify any connection between the copyright claims and the advertising activity, there is no duty to defend. *Sentry Ins. v. R.J. Weber Co.* 2 F.3d 554 (5th Cir.1993). *But see Irons Home Builders, Inc. v. Auto–Owners Ins. Co.,* 839 F.Supp. 1260, 1265 (E.D.Mich.1993) (without mentioning the need for a causal connection, court held that allegations of copyright infringement for copying a set of plans for a house, gave rise to a duty to defend); *Zurich Ins. Co. v. Killer Music, Inc.* 998 F.2d 674 (9th Cir.1993) (holding insurer had a duty to defend a copyright infringement case against the insured but court did not address whether copyright infringement was "advertising injury" or whether there was a casual connection).

Contrary to Plaintiffs' contention, advertising activity is not clearly evident in the underlying complaint. In fact, the only instance when the word "advertising" appears in the complaint, it refers to the third party plaintiff's activities and not to any actions by Poof Toys. (Complaint Count VIII, ¶ 113, p. 31). While the underlying complaint does not on its surface appear to allege any advertising activities, the complaint is replete with

the term "marketing." *See* Plaintiffs' Reply, p. 2 n. 1 (listing every page and line number on which the word marketing appears in the Steorts complaint). According to *Webster's Third New International Dictionary,* "advertising" is "the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public, especially by means of printed or broadcast paid announcements." *Webster's Third New International Dictionary,* unabridged, 31 (1986). The same dictionary defines "marketing," among other definitions, as "an aggregate of functions involved in transferring title and in moving goods from producer to consumer." *Id.* at 1383. This definition would include advertising activities. Also, as it is commonly used, marketing refers to a department within larger companies and its functions which includes market research, (to understand the what makes certain products sell and the likes and dislikes of the consuming public), and formulating strategies to sell their products or services, including advertising. Also, this Court's conclusion that marketing, as used in the complaint, included more than mere sales activity is supported by the fact that the California complaint frequently listed the terms "market" or "marketing" in the same sentence or paragraph as "sell" or "sales", e.g., Complaint, ¶¶ 26, 31, 39, 113.[6]

Yet, even one does not agree that advertising activities arguably fall within the term "marketing," allegations of trademark and trade dress infringement inherently involve advertising activity. In other words, there

---

**6.** Arguably, copyright, trademark, trade dress, title, and slogan infringement also occurred in the course of advertising when Poof Toys attempted to promote and sell the infringing products and marketing ideas, including names and packaging, to representatives of Wal-Mart and Target stores. *See* Steorts Complaint, ¶¶ 39, 40. To accept this argument, made by Plaintiff's counsel at oral argument, the Court would have to adopt the minority view that advertising need not be directed at the public at large but may be targeted to a group of potential buyers, whomever they may be, including retailers. *See Bank of West,* 2 Cal.4th at 1277, 10 Cal.Rptr.2d 538, 833 P.2d 545 ("Most of the published opinions hold that "advertising" means widespread promotional activities directed to the public at large)." *See also* Terri D. Keville, Note, *Advertising Injury Coverage: An Overview* 65 S.Cal.L.Rev. 919, 941–

42 (noting that only a minority of cases defines advertising to include personal solicitations and cites *Liberty Life Ins. Co. v. Commercial Union Insurance Co.,* 857 F.2d 945 (4th Cir.1988) and *John Deere Ins. Co. v. Shamrock Indus., Inc.,* 696 F.Supp. 434 (D.Minn.1988), *aff'd* 929 F.2d 413 (8th Cir.1991)). In a recent opinion, a California district court also adopted the view "that the term "advertising" encompasses the kind of personal, one-on-one and group solicitations that Colombo engaged in on behalf of Sentex and for which ESSI complainted." *Sentex Systems, Inc. v. Hartford Accident & Indemnity Co.,* 882 F.Supp. 930, 939 (C.D.Cal.1995) (Paez, J.). This Court declines to determine whether the alleged promotional activities directed to retailers are within the definition of "advertising" because it is unnecessary to this Court's ultimate decision.

can be no trademark/trade dress infringement without advertising having occurred. This conclusion results from a required element in every trademark/trade dress case, that the mark or dress is likely to cause confusion to the consumer or deceive the consumer as to the origin or manufacturer of the goods. *See* 15 U.S.C. § 1125(a). To have (or potentially cause) this effect, one must clearly advertise (announce to the intended customers) the mark or dress. This Court finds the reasoning of the district court in *J.A. Brundage* persuasive in this matter.

> Trademark or tradename infringement, in contrast [to patent or copyright infringement], necessarily involves advertising, or use, of the mark or name to identify the merchants's goods or services. Thus, where it is possible to state a claim for patent infringement or copyright infringement without necessarily alleging that such activities occurred in advertising one's goods, it is not possible to allege a claim for trademark, servicemark or trade name infringement without the infringing mark being used to identify the goods or services to the public.

818 F.Supp. at 553.[7] Such observations are applicable to the trade dress offense which suggests that the entire product's appearance and packaging, a form of advertising, is intended to deceive or mislead the public. Therefore, this Court finds that the claims for trademark and trade dress infringement arguably fall within the course of advertising the insured's goods and thus, within the coverage of the policy (assuming no exclusion applies).

(3) Exclusions.

■ Under Michigan law, an insurer is not required to defend against claims for damages which are expressly excluded from coverage. *Parameter Driven Software v. Massachusetts Bay Ins. Co.*, 25 F.3d 332 (6th Cir.1994) (underlying litigation including claim for "unfair competition" relating to two trademarks came within exclusion for advertising offenses arising out of "infringement" of trademark, service mark or trade name, other than titles or slogans).[8] If an insurer intends to exclude coverage under certain circumstances, it should clearly state those circumstances in the section of the policy entitled "Exclusions." *Fragner*, 199 Mich. App. at 540, 502 N.W.2d 350.

Coverage is excluded in the instant policy for personal or advertising injuries "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured." (Policy, p. 66). Also excluded are:

> "Advertising injury" arising out of:
>
> (1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;
>
> (2) The failure of goods, products or services to conform with advertising quality or performance;
>
> (3) The wrong description of the price of goods, products or services; or

---

7. The *J.A. Brundage* court was relying on the Black's Law Dictionary definition of advertising, which, while more expansive, does not differ in spirit from the above-cited Webster's definition. Black's defines advertising as:

> To advise, announce, apprise, command, give notice of, inform, make known, publish. To call a matter to public attention by any means whatsoever. Any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business and includes ... statements and representations ... contained in any notice, handbill, sign, catalog, or letter or printed on or contained in any tag or label attached to or accompanying any merchandise.

*J.A. Brundage*, 818 F.Supp. at 558 (quoting Black's Law Dictionary 54 (6th ed. 1990)). This Court also adopts this definition and finds that the use of a trademark or distinctive trade dress inherently includes advertising, i.e., the use of the mark or packaging on the product itself.

8. Prior to the standard insurance form used by the parties to this litigation, its predecessor was the 1982 Broad Form Endorsement which specifically excluded trademark claims. *Advance Watch*, 878 F.Supp. at 1042, n. 14 (citing Susan J. Miller & Philip Lefebvre, Miller's Standard Insurance Policies annotated 436 (1989)). Judge Cook noted that the elimination of the reference to trademarks in the current standard insurance policy form implies what this Court has already concluded: that the policies were intended to cover such claims.

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

(Policy, p. 66).

Defendant has alleged that "at least some of the counts involve violations of penal statutes or ordinances," (Answer of Defendant, p. 16), without specifying which counts or which laws were supposedly violated. After a careful review of the California complaint, this Court finds no reference to the violation of any penal statute or ordinance. Moreover, trademark infringement, like copyright infringement, may or may not involve willfulness. *See Irons Home Builders, Inc.*, at 1266 (willful violation of the copyright laws not necessarily a willful violation of a penal statute so as to defeat coverage under Michigan law); *Zurich Ins. Co. v. Killer Music, Inc.* 998 F.2d 674, 678 (9th Cir.1993) (copyright infringement is not willful per se); 15 U.S.C. § 1125(a). Thus, it is not reasonable to believe that the claims for trademark and trade dress infringement are subject to any enumerated exclusion.

*Conclusion.*

For the reasons stated herein, this Court finds that the complaint filed by the third party Andrea Steorts in United States District Court for the Southern District of California, Case No. 94–0715, arguably falls within the Defendant's contractual duty to defend. Accordingly, as to the instant case, the allegations of trademark and trade dress infringement are "advertising injuries" caused by an offense committed in the course of "advertising [Plaintiff Poof Toy's] goods, products or services" and covered by Section I, Coverage B(1)(b)(2) of the applicable policy. Therefore, under Michigan law, the Defendant has a duty to defend the entire California lawsuit.

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED.

IT IS ORDERED AND ADJUDGED that Judgment be entered in favor of Plaintiffs.